ANDREW  F.  HASTINGS,  WILLIAM  LIBBEY  AND  WILLIAM
F.  FORBEY *v.* RUSSELL  G.  HOPKINSON  AND  GEORGE  H.
PAUL.

*Partnership.  Limitation  of  liability  of  a  copartner;  by  what
law  governed,  and  how  proved.*

A provision, in articles of copartnership, that one of the partners is not to be liable
for any purchase made by the firm on credit, is valid and operative, and will pre-
vent a recovery against him, on account of such a purchase, if the person of whom
it is made is informed, or has knowledge of the provision.

The liability of a partner, and the power of the other members of the firm to bind
him, by a purchase of goods on credit in the state of New York, is to be deter-
mined by the laws of this state, if the partnership was formed, and its business
carried on here.

The provisions and conditions of written articles of copartnership cannot be proved
by parol by the copartners themselves who have the original articles in their pos-
session, or under their control. And in this case where the plaintiffs were seeking
to charge the defendants as copartners, and had given them notice to produce the
written articles, and upon their neglect to do so had introduced depositions of a
witness tending to prove such a partnersrip, *it was held* that a further deposition
of the same witness, taken by the defendants in reference to the contents or pro-
visions of those articles, was inadmissible, either as a cross-examination upon, or
as a continuation of the testimony contained in the other depositions.

ASSUMPSIT  for goods and money with a specification.  Plea,
the general issue; trial by jury, March Term, 1855,—PIERPOINT,
J., presiding.

No defense was made by Paul, and a verdict was rendered
against him for the amount of the plaintiffs' claim and costs.  Hop-
kinson defended.  The plaintiffs claimed to recover against the
defendants as partners with one S. B. Rockwell, and as having, as
such partners, conducted the mercantile business under the firm
and style of George H. Paul, and made the purchases and received
the cash charged in the plaintiffs' specification, at the city of New
York.  In support of this claim the plaintiffs introduced two depo-
sitions of said Rockwell, one taken April 26th, 1851, the other
May 3d, 1851, and other evidence which tended to show that said
Rockwell applied to them prior to the commencement of the ac-
count, representing to them that the firm was formed between him-
self and the defendants, and that Hopkinson was worth, at least,
$10.000; and that said representations were made to the plaintiffs

by Rockwell afterwards, and from time to time, while the account accrued, and as the sales were made; and that the plaintiffs, relying upon these representations, sold to the defendants, and said Rockwell as such partners, the bills of merchandize specified, the purchases being negotiated by Rockwell, and made at the city of New York, where the plaintiffs conducted their business; and that the goods, as sold, were charged to the defendants by the style of their firm, forwarded to Burlington, and there used by the firm in its business.

Hopkinson offered in evidence a deposition of Rockwell, taken on the part of the defense, on the 17th of February, 1853, as a cross-examination of the witness, to the depositions introduced by the plaintiffs. The plaintiffs objected to the admission of those parts of the deposition contained in brackets. When the objection was made, it was admitted by Hopkinson that the plaintiffs had duly notified his counsel to produce, on the trial, the articles of partnership described in the depositions introduced by them. The court overruled the objection, and admitted the deposition, to which the plaintiffs excepted.

The defendants introduced no other evidence, and having rested, the plaintiffs offered in evidence a printed book, purporting to have been published in New York, and to contain the statutes of that state, and among them a statute on the subject of limited partnerships, purporting to have been passed anterior to the commencement of the account, with parol evidence that, when the account commenced, said statute of limited partnership was, and ever since has been, in force in that state. The court excluded this evidence, and the plaintiffs excepted to the exclusion of it.

The plaintiffs requested the court to instruct the jury that, if the facts stated by Rockwell in those parts of his deposition taken for the defense, which the plaintiffs objected to, were true, Hopkinson was liable to the plaintiffs for the account, if the sales and deliveries were made by the plaintiffs relying upon the credit of Hopkinson, as such partner of Rockwell and Paul, and that if they should find that the sales and deliveries were so made, they should return a verdict for the plaintiffs.

The court refused so to charge, but did charge the jury that, if the evidence of Rockwell was true, he and the defendants were partners during the period in question, and their verdict should be

for the plaintiffs against both defendants, unless the jury found that, at the time the partnership was formed, it was agreed between Paul, Rockwell and Hopkinson that no goods should be purchased in market upon the credit of the partnership, and that Hopkinson was not to be made liable for the purchase of any goods in market; and that the plaintiffs, at the time they sold the goods specified, had full knowledge of this agreement; and if they so found, their ver-dict should be in favor of Hopkinson.  To this charge, and refusal to charge as requested, the plaintiffs also excepted.  Verdict for the plaintiffs against Paul alone.

In the depositions taken by the plaintiffs, Rockwell testified that there were written articles of copartnership between, and signed by the defendants Hopkinson and Paul, and himself, in April or May, 1850, by the terms of which each party was to receive one-third of the profits; that Hopkinson was to, and did put $1000 into the business; that the business was conducted in the name of George H. Paul; that he (Rockwell) as agent of the firm, bought of the plaintiffs, for the firm, the goods specified, &c;

Those parts of the deposition, taken on the part of the defense, which were considered by, and are referred to in the opinion of the supreme court, were as follows, the parts objected to by the plaintiffs being enclosed in brackets.

"I, Silas B. Rockwell, of &c., depose and say : that about the 1st of April, 1850, written articles of agreement were entered into between George H. Paul, Russell G. Hopkinson and myself, [ by which it was agreed that Hopkinson should advance to Paul one thousand dollars, for the purpose of enabling him to transact mercantile business in Burlington, Vt., and that Hopkinson should bear one-third of the expense of carrying on said business, including only the incidental expense of carrying on said business, such as rent, wood, lights, and expenses of going to market, and was to receive one-third of the profits of said business ; but the said Hopkinson was, by the terms of said contract, not to be liable for any debts which might be contracted in purchasing goods, and at the end of one year from the date of said agreement, Hopkin-son was to have the right to take out of the concern the thousand dollars which he so paid in, and if he did so, his interest in the concern was to cease.  It was also agreed that the remaining two-

thirds of the profits of said business, should be equally divided between the said Paul and myself, and that the business should be transacted in the name of Paul.]     *     *     *     *     *     *     *     *     *     * " The business was carried on in the name of Paul, by me as his agent ; I mean the business of the store until Paul's failure.

" Hopkinson was never consulted about the business, and never, to my knowledge, gave any directions as to its management, but, soon after the agreement was made, left Vermont, and did not return before Paul's failure.

" I further say that I made all the purchases of goods in the name of George H. Paul.

" [ At the time of making the first purchase of Hastings, Libbey & Forbey, after the making of the contract between Hopkinson, Paul and myself, as above stated, I informed William Hastings, of the firm of H., L. & F., of the arrangement between Hopkinson, Paul and myself, and stated to him that Hopkinson was not to be liable for any of Paul's purchases.]     :

" I think Hastings then inquired of me if Hopkinson had advertised the fact that he was a select partner, and I informed him that he had not.

" [ I had other conversations with the said Hastings, during the spring, summer, and fall of 1850, upon the subject, in which, also, I informed him of all the terms of Hopkinson's connection with Paul.]"     *     *     *     *     *     *     *     *     *

*W. W. Peck* and *E. Harvey* for the plaintiffs.

1. The court erred in refusing to charge as requested, and in charging as it did.

A perception by one, as partner, in the profits of a business, subjects him, as to third persons, to all losses which arise in the course of it, consistently with its terms.   Restrictive arrangements between the partners, as to the kind, or extent of losses which they shall share in, do not affect third persons, if known to them.   The notice leaves the fact of a perception of the profits remaining, and therefore its legal effect.   In this case, H., P. & R. were partners *inter sese.*   3 Kent's Com. 23–30.   Story on Part. § 54.   *Dobb et al.*

*v. Halsey*, 16 Johns. 34. *Cheap et al* v. *Crammond*, 4 B. & Ald. 663. *Everitt* v. *Chapman*, 6 Conn. *Griffith et al.* v. *Buffum et al.* 22 Vt. 181. 1 Smith's Lead Cas. 832–834.

A partnership implies power in each member to deal upon its credit. *U. S.* v. *Winship*, 5 Peters. The provision was a mere agreement by P. & R. to indemnify H. against its exercise.

If this is not the import of the provision, its import is to permit R. & P. to purchase for the business on their joint or several credit; thus admitting H. to the profits which might arise from such purchases, and attempting to exempt him from the debts which should be thus created. It left him a general partner to third persons, with notice. 2 Wm. Black, 998, *Grace* v. *Smith*. 2 H. Black 235, *Waugh* v. *Carver*. 4 East. 114, *Herketh* v. *Blanchard*. 12 East. 421, *Gouthwaite* v. *Duckworth*. 29 Eng. Law & Eq. 276, *Paul et al.* v. *Thomas*. 3 M. & W. 357, *Bond* v. *Pittard*. 5 B. & Ald. 954, *Gilpin* v. *Enderly*. *South Carolina Bank* v. *Case*, 1 Smith Lead. Cas. 831, note to *Waugh* v. *Carver*. 6 Serg. & Rawl. 338, *Gill et al.* v. *Kuhu*. 15 Johns. 409, *Walden et al.* v. *Sherburn & Eakin*. 9 Mass. 119, *Sylvester* v. *Smith*. 6 Conn. 347, *Everitt* v. *Chapman*. 22 Vt. 181, *Griffith et al.* v. *Buffum et al.* 9 East. 516, *Rex* v. *Dodd*. 4 Serg. & Rawl. 356, *Hess et al.* v. *Westy*. 7 Dana 368, *Shuffley et al.* v. *Howard et al.* 3 Kent's Com. 26–34. Story on Part. § 61–63. Collyer on Part. § 6, 78, 99, 80–82. 1 Story C. C. 372, *Hazard* v. *Hazard*. 7 Ala. 761.

2. The court erred in excluding the evidence offered of the N. Y. Law.

If the matter sworn to by R., in his third deposition, as to the contents of the articles, was admissible, this law was material. The contracts of the purchase were made in New York. If the restriction was legal or effective by the law of the *situs* of the firm, to be effective on a contract made in its business in New York, it must also be effective by the law of that state. The opinion of the court in 25 Vt. 73, *Cutler* v. *Est. of Thomas*, seems to adopt a different principle. It is submitted that in this particular, the opinion is unsound.

3. The court erred in admitting the evidence objected to by the plaintiffs.

A party cannot prove the contents of an instrument by parol, without first proving an inability to produce the instrument.

The ruling cannot be justified on the ground that the deposition was a cross-examination. The principle upon which it was admitted, would, when one party is compelled to rely upon the contents of an instrument in the control of another, enable the latter to withhold its production after notice; thus compel the former to resort to parol evidence, and under the color of a cross-examination, introduce like evidence. In this class of cases the rule would thus be wholly abrogated, and the mischief which it intends to exclude, induced. 1 Greenleaf. Ev. § 87, 88, 463, 465, 509, 563. 1 Phil. Ev. 441. 1 Cow. and Hill 1219, note 862.

*Underwood & Hard* for the defendants.

I. Where a party seeks to charge a copartnership, by virtue of the contract of copartnership, and not by reason of such a holding out, as to indicate to the world that a copartnership exists, the party so seeking to render the firm liable, must take the contract as it actually is between the members, and subject to all the restrictions and limitations contained in it; and this whether such party has notice of such restrictions, previous to the dealing with the firm or not.

II. But if this were not so, a stipulation in the contract of copartnership, that one of the members shall not be bound by the contracts of the others, in relation to the partnership business, is binding upon all who have knowledge of such stipulation, before having any dealings with the firm. Coll. on Part. § 98, 387, 388, 388. *Dow* v. *Seyward*, 12 N. H. 275. *Galway* v. *Matthew*, 10 East. 264. ——— v. *Layfield*, 1 Salk. *Vice* v. *Fleming*, 1 You. & Jerv. 227. *Boardman* v. *Gore*, 15 Mass. 331. *Cargill* v. *Corby*, 15 Miss. 124, cited 14 U. S. Dig. 463. *Leavitt* v. *Peok*, 3 Conn. 124. *Alderson* v. *Pope*, 1 Camp. 404. *Ensign* v. *Ward*, 1 John. Cases 171. Story on Part. § 128, 129, 130. Chitty on Con. 256. 1 Stark. 164. 2 E. C. L. R. 339, *Willis* v. *Dyson*.

III. The book offered by the plaintiffs, purporting to contain the statute of New York, relating to limited partnerships was properly

9

rejected. The validity and effect of the contract between the defendants, and the obligations and liabilities created by it, are to be determined by the law of Vermont, and not by that of the state of New York; *Cutler* v. *Estate of Thomas*, 25 Vt. 73.

IV. The plaintiffs' objections to the deposition of Rockwell, offered by the defendants, were properly overruled.

The plaintiffs having read the ex parte depositions of the same witness, taken without notice to the defendants, and relating to the same matters embraced in the deposition which was objected to, the defendants had the right to use the deposition in question, as a cross-examination. If this were not so, great injustice would be done, for a party, by taking an ex parte deposition, could exclude all that the witness might know in favor of the other party.

The opinion of the court was delivered by

ISHAM, J. Upon the facts stated in this case two questions have been urged upon our consideration. In the first place, is the defendant Hopkinson liable, as partner, for the plaintiffs' account? and, in the second place, was the deposition of Rockwell, taken by the defendant Hopkinson, properly received in evidence?

It is obvious that Hopkinson is not liable in this action, in consequence of his name and credit having been held out to the world as a partner. To render a person responsible on that ground, a positive consent, or at least a knowledge by him of such a use of his name, from which his acquiescence may be inferred, must be shown. Gow on Part. 12, 24, 129. The facts fully appear, in this case, that Hopkinson never purchased any goods himself for the firm, nor did he ever consent that any should be purchased on his credit or responsibility. The business of the firm was transacted in the name of George H. Paul. No consultations were had with Hopkinson in relation to the business of the firm, nor were any directions given by him in relation to its management; but, on the contrary, soon after the copartnership was formed, he left this state, and did not return until after the failure of Paul. If, by his consent, his name had been used in that manner, his liability for this account would have followed, on principles of general policy, though he might not have received any portion of the profits of the business. *Waugh* v. *Carver*, 2 H. Blac. 235,

If Hopkinson is liable in this action, it is upon the ground that he was a party to the articles of copartnership, and, as such, entitled to receive his proportion of the profits of the business. As a general rule, when goods are sold to, and upon the credit of a firm, all the members of that firm are individually responsible for them, and that individual liability is not affected by any reservation or agreement between themselves, that one of the firm shall not be responsible. In such case it will make no difference whether the business was carried on for the benefit of the partners, or for the benefit of others ; nor is it material that the business was transacted in the name of all the partners, or in the name of one of them. The liability of each partner for the debts of the firm rests upon principles of commercial policy. It arises from the necessity of those commercial operations for which partnership relations are formed, and from the principle also, that, as they receive a portion of the profits, and thereby subtract to that extent from the assests of the firm their means for the payment of debts, they shall be responsible for the debts of the firm. *Waugh* v. *Carver,* 2 H. Black. 235. 1 Smith's Lead. Cas. 831—note. In such case the principle applies which has been urged in the argument of this case, that an agreement, between the partners, that one of the members of the firm shall not be liable for the debts of the partnership, and that no purchases shall be made on his responsibility, is a regulation purely *inter se,* and has no effect upon the individual liability of every partner to the creditors, when in good faith the debts were contracted upon such responsibility. Story on Part. § 104–5. If this case, therefore, rested upon the facts stated in the two depositions of Rockwell, which were taken and used by the plaintiffs, that Hopkinson was one of the partners, and entitled as such to a portion of the profits, and that these goods were sold on the credit of the firm, the liability of the Hopkinson would clearly exist, and it would not be affected by any provision in their articles of copartnership, that the goods were to be purchased on the responsibility of Paul, and that Hopkinson was not to be liable for such purchases to the creditors. Such a provision would have no effect as against the creditors ; each individual member of the firm would be liable to the creditors, though, as between themselves, they would have no right to charge Hopkinson with the amount. That

was the express decision of the court in the case of *Waugh* v. *Carver*, 2 H. Black. 235, and the various cases to which we were referred.

But there is another fact which enters into the consideration of this case, which did not exist in those cases; and that is, that these plaintiffs were informed, at the time these goods were purchased by Paul, that, under the articles of copartnership, the goods were to be purchased by the other members of the firm, and on their responsibility alone, and that Hopkinson was not to be liable for goods purchased for the use of the company. With the distinct and express knowledge of that fact, communicated by the members of this firm, when the goods were purchased, the plaintiffs had no right to make the sale of those goods in any reliance upon the responsibility of Hopkinson for payment, without his personal consent.

The authorities on this subject are express in their language, and too numerous for us to entertain any doubt on this subject. In Story on Part. § 128, the rule is given, that " every contract, in " order to bind a firm, must be made with a party who has no " knowledge or notice that the partner is acting in violation of his " obligations and duties to the firm, or for purposes disapproved of, " by or in fraud of the firm. For any such contract, made with such " knowledge or notice, will be void as to the firm, however binding " it may be upon the individual partner making it. This doctrine," he observes, " follows from the known limitations of the laws of " agency; for no agent can bind his principal in any transaction, " in which he knowingly exceeds his authority, or knowingly col- " ludes with another person, having notice of any violation of the " rights of his principal." In Collyer on Part. § 98, 387–8–9, it is said, that " when the creditor has express notice of a private " agreement between the partners, by which either the power of " one partner to bind the firm, or his liability for partnership con- " tracts, is qualified or defeated, it is clear that the creditor himself " must be bound by the arrangement between the partners." The same doctrine is sustained by many decisions in England as well as in this country, and it would seem that the justness of the rule has commended itself to the laws of most commercial countries. *Willis* v, *Dyson*, 1 Starkie 164, *Gallway* v. *Mathew*, 10 East, 264,

*Vice* v. *Fleming*, 1 Y. & Jer. 227. *Leavitt* v. *Peck*, 3 Conn. 125. 15 Mass. 339. 12 N. H. 275. 1 Camp. 404.

In many cases it has been held, that notice to a creditor not to deal on the credit of a firm, given by one partner, will protect him from any future liability to that creditor, though no provision of that kind is contained in the articles of copartnership. It is obvious, that this case is much stronger, where that limitation is one of the fundamental articles of their copartnership, and was an original limitation of their agency.

This general doctrine is confirmed and illustrated by the principles regulating limited partnerships. In such partnerships, it is held, that if the liability of the partners is not legally limited, as provided by the act, they are liable as general partners, as they participate in the profits of the concern. The cases proceed upon the ground, that there has been no legal limitation of their agency or liability. But, in this case, the partnership was formed on common law principles, and there was a legal limitation as to the liability of Hopkinson, and of the agency and power of the other partners to bind him on their contracts of purchase. The extent of that power, and whether a liability rests upon Hopkinson or not, is to be decided by the laws of this state, where the partnership was formed, and where was their place of business. It was so held in the case of *Cutler* v. *Thomas*, 25 Vt. 73. The law of the state of New York was, therefore, properly held inadmissible, as it could have no effect in determining the liability of Hopkinson, or the right of the partners to bind him by their contracts of purchase. We think, therefore, that Hopkinson is not liable for this account of the plaintiffs, and that the charge of the court on this subject was correct.

We think, however, that the deposition of Rockwell, which was taken by Hopkinson on the 17th of February, 1853, was improperly admitted in evidence to the jury. It was by that deposition that the contents of the written articles of copartnership were proven; and from which it appeared that Hopkinson was not to be liable for any debts which might be contracted in purchasing goods. The creditors were probably at liberty to prove, that the defendants were partners, independently of that written agreement, (25 Vt. 73,) but clearly they had that right in this case, as they had

given the defendants notice to produce the original articles of copartnership. But the defendants had no such right. That original agreement was in their possession, and under their control; or, at least, such is the legal presumption. It was their duty, therefore, to produce the original agreement, to prove the provisions of that contract, on which rested their defense, as that instrument afforded the highest evidence of the terms of their copartnership. The case of *Brogart* v. *Brown*, 5 Pick, 18, is similar to this case on this point, and, we think, is decisive on this question. We see no ground upon which we can sustain this judgment, by treating this deposition as a cross-examination of the witness, or as a continuance of the depositions of the witness, which were taken by the plaintiffs. For this matter, the judgment of the county court must be reversed, and the case remanded.