# HILLSBOROUGH,

## JULY TERM, A. D. 1859.

| 38 | 287 |
| --- | --- |
| 71 | 277 |

## BROMLEY *v.* ELLIOT.

Where two men are jointly concerned in a transaction, under an agreement to share between them indefinitely the profits of the business, they must be considered as partners as to third persons.

The private agreements of parties relative to their connections in business, though binding as between themselves, cannot control their responsibility to others.

Those who deal with parties connected in business, are bound by their agreements with each other, if at the time they know the nature of those agreements, or have knowledge of such facts or circumstances as would lead a man of common prudence to make inquiry in relation to them.

A party having such knowledge of the facts, or so bound to make inquiry, cannot charge persons as partners if they are not such as between themselves.

Those who have no knowledge of any partnership, and deal with a party who shares the profits with a third person, may charge such third person as a partner for all debts contracted within the apparent scope of the business of the party with whom they deal.

Those who have no knowledge of the agreements of persons transacting business together, nor knowledge of any fact or circumstance which ought to put them on enquiry, may charge them as partners for all debts contracted within the apparent scope of their business, whatever may be their contracts or stipulations with each other.

No other exception has been admitted here, or can be safely adopted, to the rule, that whoever shares the profits of a business is liable as partner.

The principle adopted in some jurisdictions, that a person may receive a share of the profits of a business by way of salary, or compensation

for services, without being held liable as a partner to third persons, has not been adopted here, and cannot be received unless with the qualifications that the true character of the agreement is known, or the apparent relations of the parties are such as should put parties dealing with them on enquiry.

The supposed rule that "no partnership will be created as to third persons, if the whole transactions are clearly susceptible of a different interpretation, or exclude some of the essential elements of a partnership," is not law here, if it is anywhere.

If a person transact business apparently on his own account, and for his own benefit, another person, who is found to share the profits of the business with him, will be chargeable as a partner for all debts contracted by the former within the apparent scope of his business, without regard to any private agreements between them.

Where two persons have entered into a written agreement relative to their business, they cannot testify as to their intention expressed in it, or so as to give a construction to the writing.

ASSUMPSIT against the defendants, as late partners, jointly doing business under the firm name of S. Hovey, to recover the amount of the account annexed to the writ, for divers goods alleged to have been sold and delivered to Hovey for the use of the firm, and also the amount of a promissory note, given by said Hovey on the 5th day of November, 1856, payable to the order of the plaintiffs, six months after date, for the sum of $174.96, being the amount of a bill of goods that day sold and delivered by the plaintiffs to Hovey, for the use of the firm, as alleged.

Hovey was defaulted, and Elliot pleaded the general issue.

It was agreed that the plaintiffs were partners in business, as alleged in the writ, and that the goods specified in the account, and at the prices therein named, were sold and delivered by them to the defendant Hovey, at the times therein specified, and that the goods for which the note declared on was given, were sold and delivered to said Hovey at the date of the note, and of that value, and that the goods named in the account, as well as those for which the note was given, went into the store occupied by

Bromley v. Elliot.

said Hovey, in carrying on business under the agreement hereinafter set forth, during the continuance thereof.

It appeared in evidence that in pursuance of the agreement hereinafter mentioned between the defendants, the defendant Hovey conducted the jewelry and fancy goods business, in Manchester, under the name of S. Hovey, from April 2, 1856, to January 1, 1857, when he bought Elliot out. During the continuance of the business under the agreement, Hovey purchased about $4,000 worth of goods, of which those sued for in the present action were part, and Elliot put into the store during the same time goods to about the same amount. At the time Hovey bought Elliot out, the profits of the business, including the profits of all the goods, both those purchased by Hovey and those put into the store by Elliot, amounted to about $900, which was equally divided between Hovey and Elliot, Hovey giving Elliot his note, secured by mortgage of the whole stock, for one half that sum. The losses, of which some were sustained, were all borne by Hovey. Hovey was a jeweller by trade, and the proceeds of his labor when not engaged in selling goods, as well as those of a hired hand, were reckoned as profits. When Hovey bought Elliot out he gave him a note for his part of the goods in the store, and his share of the profits of the business, and secured the same, and other notes he owed him, by a mortgage of the entire stock then on hand.

The said Elliot was permitted, against the plaintiff's objection, to offer evidence tending to show, by the testimony of himself and said Hovey, that there was no understanding between the defendants that they were partners; that Hovey had no control over the goods put into the store by Elliot, except to sell them; that Elliot had a right at any time to withdraw his part of the goods, and had no control over those purchased and put into the store by Hovey; that he did not exercise any authority in

relation to the kind or quantity of goods purchased by Hovey, and that Hovey did not disclose to the plaintiffs or to any body else the existence or terms of the agreement between himself and Elliot; that Elliot had no knowledge of the purchases made by Hovey of the plaintiffs; that nothing was said between the defendants as to how losses were to be borne, and that Hovey was to be paid for his services by one half the profits arising from the sale of goods, after deducting expenses.

The following was the agreement of the defendants, under which business was conducted by Hovey, in the name of S. Hovey, as before stated:

"This is an agreement made and entered into by and between Wm. H. Elliot, of Manchester, &c., on the one part, and Stanford Hovey, of the said Manchester, on the other part. The said Elliot, on his part, agrees to furnish a stock of merchandize, consisting of watches, jewelry, brittania ware, plated ware, musical instruments and fancy goods, to the amount of from two to four thousand dollars, or as much larger as he may desire, and place the same in a store or sales room, to be furnished by said Hovey, in said Manchester, and allow said Hovey to sell at retail therefrom on the following conditions, viz.: 1. Said Hovey is to keep a true and accurate account of the sales made from said stock, which shall be rendered to said Elliot as often as he may desire, and pay all money to said Elliot, on demand, as fast as collected. 2. Said Hovey is to be responsible to said Elliot for the safe keeping and return to said Elliot of all the merchandise entrusted to his care, or the avails thereof, as above, and also all goods sold on credit. 3. Said Hovey shall not sell any goods on credit, to any amount exceeding one hundred dollars, without the consent of said Elliot in writing, which shall specify the parties and merchandize. 4. All expense of the concern, including rent, lights, fuel, clerk hire, insurance, taxes, and other incidental expenses that are necessary,

Bromley *v.* Elliot.

is to be paid from the profits of the concern, except the personal expenses and pay for services of said Hovey. 5. The net income, after paying expenses as above, is to be equally shared between the contracting parties. 6. No clerk or workman shall be employed about the concern, except those who have the approbation of said Elliot. 7. All watch work or other jobs, taken or done at or by the concern, shall be set down as sales and profits, and the proceeds divided as such. 8. It shall be the privilege of said Hovey to purchase, on his own account, any goods or merchandize that he may see fit, and expose the same for sale, and sell the same in said store, with said Elliot's merchandize, provided that the profits on the same shall be equally shared as above. 9. Said Elliot shall have the privilege of selling any goods in said store to his friends and customers, or of taking any article therefrom to sell ; but any article sold in said store, as above, the profits shall go to the concern, except musical instruments, the profits on which, sold as above, shall be the exclusive property of said Elliot. 10. All property or merchandize is to be furnished at cost, or regular six months' prices, said Hovey having the privilege of seeing the bills of the same. 11. This contract may be terminated by either party at pleasure. 12. A true account shall be kept of all exchange trades, and the result of the same set down as trade, and the profit carried out accordingly.

Given under our hands and seals, this second day of April, A. D. 1856.

Signed,      Wm. H. Elliot,    [Seal.]

               S. Hovey.         [Seal.]

A verdict was taken, by consent, for the plaintiff, judgment to be rendered thereon, or the same to be set aside and judgment rendered for the defendant, Elliot, and against Hovey, as the opinion of the court may be.

*Morrison & Stanley*, for Wm. H. Elliot.

In the absence of either a community of goods or a community of profit and loss, it is clearly the general rule that no partnership will exist between the parties themselves, if it is contrary to their real intentions; Story on Part., sec. 30; Collyer on Part., chap. 1, sec. 1; and concerning the real intention of the defendant in the case at bar, there can be no doubt. It no where appears that the idea of a partnership ever occurred to either of them, and most certainly it did not to Elliot. There was in this case no community of profit and loss between these parties. Elliot's goods, as the agreement shows and the case finds, bore all the expenses of the store, except paying for Hovey's time. Hovey was merely the bailee of the goods, Elliot having the entire control over them, with the right to withdraw them at any time, and the whole loss was to be borne by Hovey. As to Elliot's goods, Hovey was an agent, receiving a portion of the profits by way of salary, or compensation for selling. Then, again, Elliot had no interest in Hovey's goods. Hovey had the entire control over the purchases and goods, and Elliot was in no way cognizant of them. What Elliot received from Hovey's goods was his compensation for what he expended in store rent, clerk hire, and other expenses, the benefits of which Hovey had, in the facilities it gave him for the sale of his goods.

In addition to these suggestions, we cite as authorities in point, the following cases: *Clark* v. *Reed*, 11 Pick. 446; *Baxter* v. *Rodman*, 3 Pick. 435; *Gallop* v. *Brocklebank*, 3 Man. & G. 250; *Hasketh* v. *Blanchard*, 4 East 143; *Ex parte Hamper*, 17 Vesey, Jr., 403; *Geddes* v. *Wallace*, 2 Bligh 296; *Thompson* v. *Snow*, 4 Greenl. 264; *Wilkinson* v. *Frasier*, 4 Esp. 182; *Meyer* v. *Sharps*, 5 Taunt. 74; *Rice* v. *Austin*, 7 Mass. 197; *Miller* v. *Bartlett*, 15 S. & R. 137; *Loomis* v. *Marshall*, 12 Conn. 69; *Brady* v. *Calhoun*, 1 Penn. 140; *Perrine* v. *Hankinson*, 6 Halst. 181; *Harding* v. *Fox-*

Bromley *v.* Elliot.

*croft*, 6 Greenl. 76 ; *Mair* v. *Glennie*, 4 M. & S. 240 ; *Good*
v. *McCartney*, 10 Texas 193 ; *Johnson* v. *Miller*, 16 Ohio
431 ; *Holmes' Case*, 2 Levins C. C. 256 ; *Wilson* v. *White-*
*head*, 10 M. & W. 503 ; *Mason* v. *Potter*, 26 Vt. 722 ;
*Clement* v. *Hadlock*, 13 N. H. 185 ; *Chandler* v. *Brainerd*,
14 Pick. 285 ; *Knowlton* v. *Reed*, 38 Maine 246 ; *Muzzey* v.
*Whitney*, 10 Johns. 226.

We then come to the second question in this case :
Have the defendants so conducted as to render themselves
liable to the plaintiffs, *quasi partners ?* And here it should
be borne in mind that the defendants never held them-
selves out to the world as partners ; that the plaintiffs
trusted entirely to Hovey, and gave him credit individ-
ually. But, it may be urged, that by operation of law
the mere right to participate in the profits creates a part-
nership as to third persons. We reply : That this position,
if true at all, is true only in the most general sense, and
that there are numerous exceptions to, and many qualifi-
cations of, the rule, and that the case at bar comes within
the scope of these exceptions and qualifications. Thus :
They must share in the profits as profits, to render them
liable as partners. *Ex parte Watson*, 19 Vesey 461 ;
*Loomis* v. *Marshall*, 12 Conn. 69 ; *Chapman* v. *Bostwick*,
18 Wend. 184. It is also said this must be a share of the
net profits, and not a proportion of the gross proceeds.
Story on Part., sec. 34, and cases cited ; *Bond* v. *Pittard*,
3 M. & W. 357 ; *Denny* v. *Cabot*, 6 Met. 82 ; *Dry* v.
*Boswell*, 1 Camp. 330 ; Collyer on Part., sec. 35, and note
to Perkins' edition. And if a party receive a portion of
the profits of a business by way of a salary, or in compen-
sation for services or expenditures, he will not be liable
to third persons as a partner. Story on Part., sec. 41, and
cases cited ; 3 Kent's Com. 25, and notes ; *Vonderberg* v.
*Hull*, 20 Wend. 70 ; *Dixon* v. *Cooper*, 3 Wils. 40. In
*Loomis* v. *Marshall*, cited supra, where *Huntington*, J., con-
siders and has collected the leading cases, he says : " A

community of profits is essential. * * * A party must not only share in the profits, but share in them as a principal, for the rule is now well established that a party who stipulates to receive a sum of money in proportion to a given quantum of the profits, as a reward for his labor, is not chargeable as a partner; so, also, *Turner* v. *Bissell*, 14 Pick. 192.

*Story* says: "No partnership will be created as to third persons if the whole transactions are clearly susceptible of a different interpretation, or exclude some of the essential ingredients of a partnership." Sec. 30. We submit, then, that in the case at bar the acts of the defendants are clearly susceptible of a different construction from that of holding them as partners. Every fact in the case goes to show that Hovey was merely the agent of Elliot to sell his goods, and that he received a share of the profits as compensation for his services.

Finally, we submit, that on this point the weight of authority, as well as reason, is with the defendant. In *Newman* v. *Bean*, 21 N. H. (1 Fost.) 93, the contract was that A. was to furnish goods to B. to sell as his agent, and B. might fill up a store with articles that would sell at a profit — the profits, after paying the expenses, to be divided—*Held*, no partnership as to third persons. Where A. made a contract with B. to manufacture certain articles for him, B. to furnish the material, and A. was to have one half the profits, and ten per cent. on all sales made by himself, it was held no partnership as to third persons. *Judson* v. *Adams*, 8 Cush. 556. In a written contract between B. and R., B. was to furnish wool, to be worked into cloth, and the profits to be divided and the expenses shared. In an action against both, for the price of the warps furnished and used as above—*Held*, that B. was not chargeable as a partner with R. *Turner* v. *Bissell*, 14 Pick. 192. A., B. and C. were to jointly publish and be interested in a periodical. A. was to publish it, make

and receive payments; B. was editor, and C. printer, and was to furnish paper, charging it to mutual account. The net profits were to be equally divided. D. furnished paper to be used in printing the periodical—*Held*, that A., B. and C. were not liable as partners for the price of that paper. *Wilson* v. *Whitehead*, 10 M. & W. 303. A. agreed with B. that he should have five per cent. of the sales made by B. to his, A.'s workmen, and received it for years. B., doing business in his own name, borrowed money with which he bought goods for his store. Upon failure of B.—*Held*, that A. was not liable, as a partner with B., as to third persons. *Pott* v. *Eyton*, 3 C. B. 32. So, in *Denny* v. *Cabot*, 6 Met. 82, the question at issue is well considered, and the doctrine of *Turner* v. *Bissell* is approved. And see, also, *Dry* v. *Boswell*, 1 Camp. 329, and note; *Gibson* v. *Stevens*, 7 N. H. 352; *Grace* v. *Smith*, 2 Wm. Black. 998; *Blanchard* v. *Coolidge*, 22 Pick. 151; *Hoare* v. *Dawes*, 1 Doug. 371; *Regina* v. *Worthley*, 15 Jurist 1137; *Wish* v. *Small*, 1 Camp. 331; *Boyer* v. *Anderson*, 2 Leigh 550.

*Clark & Smith*, for the plaintiffs.

The questions arising in this case are—were the defendants partners? Have they, by their agreement and by sharing the profits of their business, rendered themselves liable as partners to third persons, though not partners between themselves?

To make them partners there must be something brought by each party into the common stock, (Story on Partnership, sec. 15; Kent. Com. 24; 3 Parsons on Contracts 124;) and there must be some participation in the profits, for without this a partnership cannot exist. Story on Partnership secs. 18, 27 and note; *Dobb* v. *Halsey*, 16 Johns. 34; *Rawlinson* v. *Clark*, 15 M. & W. 292; 1 Parsons on Contracts 125; *Ambler* v. *Bradlee*, 6 Vt. 119; *Blanchard* v. *Coolidge*, 22 Pick. 151; *Denny* v. *Cabot*,

6 Met. 82; *Ex parte Watson*, 19 Ves. 459; *Ex parte Rich-ardson*, 1 Rose 92.   But it is not essential in all cases to constitute a partnership that there should be both commu-nity of interest in the capital stock and in the profits.   If there is community of profits they are partners.   Story on Partnership, sec. 27; *Ex parte Hamper*, 17 Ves. 404; *Reid* v. *Hollinshead*, 4 B. & C. 867; *Smith* v. *Watson*, 2 B. & C. 401; *Hasketh* v. *Blanchard*, 4 East 144; 1 Parsons on Contracts 125; Bisset on Partnership 4; *Dook* v. *Swann*, 8 Greenl. 170; *Cobb* v. *Abbott*, 14 Pick. 289; *Bostwick* v. *Champion*, 11 Wend. 571.   There are cases in which the participation of the profits does not constitute the par-ties partners.   The distinction in the cases where a partic-ipation of the profits will make one liable as a partner or not, is whether there exists an interest in the profits them-selves, as profits, or only some definite proportion of the profits or some sum determined by the amount of profits, as a compensation for labor and services.   To render one a partner the interest in the profits must be mutual, and each must have an interest as principal, and not merely a compensation for services as agent or servant.   Collyer on Part., b. 1, ch. 1, p. 17, 2d Ed.   The distinction is sometimes laid down that he must receive a portion of the net profits, and not of the gross earnings.   If he is to share the net profits, he will be a partner; if in the gross profits it will be otherwise.   Story on Partnership, sec. 33; 1 Parsons on Con. 136, note; *Denny* v. *Cabot*, 6 Met. 82; *Turner* v. *Bissell*, 14 Pick. 192; *Ex parte Hamper*, 17 Ves. 405; *Ex parte Watson*, 19 Ves. 459; *Ex parte Langdale*, 18 Ves. 300; *Walden* v. *Sherburne*, 15 Johns. 409; *Champion* v. *Bostwick*, 18 Wend. 182; *Cobb* v. *Abbott*, 14 Pick. 292; *Green* v. *Busby*, 2 Bing. N. C. 108, etc.

There must be a similar common interest in the losses of the concern to some extent; at least so far as they con-stitute a charge upon or a diminution or deduction from the profits, since the net income is alone to be shared, and

Bromley *v.* Elliot.

there must be in all cases a deduction of the losses to a greater or less extent, according to the agreement of the parties, in order to ascertain what are the profits. Story on Partnership, secs. 19, 23 and 60 ; *Bond* v. *Pittard*, 3 M. & W. 359 ; *Gilpin* v. *Enderby*, 5 B. & C. 954 ; *Cheap* v. *Cramond*, 4 B. & Ald. 663 ; *Ex parte Langdale*, 18 Ves. 300.

That the parties are such partners, is to be determined by their actual participation of the profits, which is held to require of them a participation of the losses, because it diminishes the fund from which the losses are to be paid. 1 Parsons on Contracts 133 ; Story on Partnership, sec. 60 ; *Grace* v. *Smith*, 2 W. Bl. 998 ; *Ex parte Langdale*, above cited ; *Waugh* v. *Carver*, 2 H. Bl. 235 ; S. C., 1 Smith's Leading Cases 821, and notes ; Bisset on Partnership 9.

The parties are entitled to an account with each other as partners, to determine the net profits. Bisset on Partnership 4 ; *Ex parte Hamper*, 17 Ves. 404 ; *Champion* v. *Bostwick*, 18 Wend. 182 ; 3 Kent Com. 25, note.

In order to one being in partnership he must have an interest in the stock with the right of control, and thus have a right to the profits as the result of the capital and industry in which he and others are interested, and must be liable for losses. *Ogden* v. *Astor*, 4 Sandf. 311.

In this case, Hovey and Elliot each furnished goods ; each by the agreement had the power to sell, and the profits on the goods, both of Elliot and Hovey, after paying the expenses, were to be shared between them. Elliot was to have the power to determine in regard to the sales on credit exceeding one hundred dollars, and the determination of who should be employed as clerks and workmen. Elliot was to have not only one half of the profits of the goods placed by him in the store, but also one half of the profits of those bought or placed there by Hovey, except musical instruments, of which he had the whole profit, whether placed in the store by him or by Hovey. Accounts

of the sales and exchanges were to be kept, and Elliot had the right to such account, to determine the amount of such net profits. Such account was rendered, the details of which are not stated; but it will be presumed to have included all the matters embraced in the agreement, and that it included the profits on the goods put in the store by Elliot, and also those put in by Hovey, as well as the sales of musical instruments; and that the net profits of all these goods were accounted for, and that Elliot, in the $450 received by him, received such profits, and that without regard to the fact that the goods were procured, or sales made by himself or Hovey. The goods in the store were kept in common; there was no separation of one from the other, and no such separation of the proceeds. They had a joint interest in the profits derived from all. They had also a common interest in the losses to the extent of the expenses; for, if the expenses had exceeded the profits, they must have equally borne the loss. Hovey was to account for the goods received from Elliot, or the avails thereof; but Elliot also had the power to sell any of the goods, and he shared in the profits of all, and this implies the necessity of his rendering an account of such sales to Hovey. Neither of these parties were to pay the other the value of the goods put in by him, in case they were sold at a loss, or the profits did not amount to sufficient to pay the expenses. It was not a case where Elliot was to receive a certain per cent. of the profits for his services, nor a certain amount, proportioned to such profits, as compensation for his services, or as a commission for selling the goods. The true statement of the position of the parties was that each was to furnish goods, and each was to have the power to sell. Hovey was to provide a store, and Elliot to retain a check on the manner of selling and on the employment of the clerks and workmen. Each had a right to call upon the other for an account to determine the amount of the profits; the

expenses were to be borne in common ; and the net profits arising from the sales were to be divided between the parties. If such an agreement does not constitute a partnership, it is difficult to conceive of any agreement that would do so.

But if the court should be of opinion that there was no partnership between Elliot and Hovey, as between themselves, yet, as to third persons they are to be considered as partners, and are liable as such to those dealing with them, and more particularly to those of whom goods were purchased which went into the business of the partnership, and from the sale of which arose the profits actually participated in by these parties. The agreement shows that they were to share in the net profits. The general rule is, as stated above, that, when parties share in the profits as such, they are partners. The only exception to this rule is when the seller, agent or servant receives a rate per cent. proportioned to the profits, as compensation for his services, (1 Parsons on Con. 134); but it is never applied to one who furnishes the capital, has power to sell, and shares the net proceeds of his own and his partner's goods. In no sense can it be said that Elliot received a share of the profits as compensation for his services. As to third persons, the common law holds that the mere right to participate in the profits creates a partnership, notwithstanding there is no participation of the losses *ultra* the profits; and the parties do not intend to become partners, because, in determining the amount of profits, there is incidentally and to some limited extent a participation in the losses. But the main reason is that he who takes a share of the profits takes a part of the fund on which the creditor relies for payment. Story on Part., secs. 60, 61 ; *Cheap* v. *Cramond,* 4 B. & Ald. 663 ; S. C., 6 Eng. Com. Law 645 ; *Gilpin* v. *Enderby,* 5 B. & Cr. 954 ; *Reid* v. *Hollinshead,* 4 B. & Cr. 867 ; *Oakley* v. *Aspinwall,* 2 Sandf. Sup. Ct. 7 ; *Ex parte Langdale,* 18 Ves. 300 ; *Bond* v. *Pittard,* 3 M. &

W. 359; *Grace* v. *Smith,* 2 W. Bl. 998; *Waugh* v. *Carver,* 2 H. Bl. 235; S. C., Smith's Leading Cases 491, and note; *Green* v. *Busby,* 2 Binn. N. C. 108; *Smith* v. *Watson,* 2 B. & C. 401; S. C., 9 Com. Law 180; 1 Parsons on Contracts 134; *Hesketh* v. *Blanchard,* 4 East 144; Chitty on Contracts 240; *McIver* v. *Humble,* 16 East 74. And it is equally indifferent whether his share is large or small. *Rex* v. *Dodd,* 9 East 527. The rule is the same where the partners were to divide the profits and one bear all the loss, or where the expenses alone were to be deducted from the profits. *Pearson* v. *Skelton,* 1 M. & W. 504. And the same is the rule though some were not known to be such at the time by persons dealing with the firm. Chitty on Contracts 240, and notes; *Winth.* v. *Crowther,* 1 C. & J. 316. The case of *Bailey* v. *Clark,* 6 Pick. 372, presents a strong analogy. When C. furnishes money to D. to be employed in trade, either by D. alone or in partnership with others, the net profits to be divided between C. and D., it was held that as to creditors dealing with D., C. & D. were considered as partners. The rule is laid down in *Vassar* v. *Camp,* 14 Barb. 341, that he who takes part of the profits indefinitely shall by operation of law be liable for losses as a partner; for by taking part of the profits he takes from the creditor a part of the fund which is security for the payment of their debts. Elliot, by their agreement, was to share the profits indefinitely, though the fact was not known to the plaintiffs when they sold the goods to Hovey; but that circumstance is no bar to a recovery. Hovey is defaulted, and thereby admits that as to him such partnership existed. Here there was a participation on the part of Elliot in the profits derived from the sale of the goods obtained from the plaintiffs. If there is any just reason for the above rule, it has a strong application in this case. There was a division of the profits derived from the sale of the goods obtained of the plaintiffs, as well as those purchased of other persons, and the net profits

arising from the sale of goods placed in the store by both parties went to make up the $900 profits, and that amount was divided between the defendants. It might perhaps be set up that this division of profits was only a mode of determining the compensation of Hovey, provided the profits had arisen solely from the sale of goods furnished by Elliot; but such is not the case.

The conclusion seems inevitable that there was such a participation of profits by Elliot and Hovey as to render them liable to the plaintiffs as partners in this case.

BELL, J. We regard the law as settled in this State, that where two men are jointly concerned in any transaction, under an agreement to share between them the profits of the business indefinitely, they must be considered as partners in the transaction. It was distinctly so decided in the case of *Brown* v. *Robbins*, 3 N. H. 65; and the court cite, in support of the decision, *Dob* v. *Halsey*, 16 Johns. 34; *Waugh* v. *Carver*, 2 H. B. 235; *Grace* v. *Smith*, 2 W. B. 988; *Coope* v. *Eyre*, 1 H. B. 43; *Hoare* v. *Dawes*, Doug. 373; *Walden* v. *Sherburn*, 15 Johns. 422. It was an action brought to charge two persons as partners, one of whom denied his liability, and the precise question was of the liability of the parties as partners to third persons.

The same principle is supported, as the general rule, by the elementary books, even where its force is impaired by groundless exceptions. 3 Stark. Ev. 1071, notes; 2 Saund. Pl. & Ev. 710; 1 Smith's L. C. 491; Gow Part. 14; Smith's Mer. Law 21; Story Part. 5, 60; Cary Part. 7; 3 Kent Com. 32. And by a great mass of decisions. *Ex parte Digby*, 1 Deac. 341; *Barry* v. *Neshan*, 3 C. B. 641; *Reid* v. *Hollinshead*, 4 B. & C. 867; *Ex parte Langdale*, 18 Ves. 301; *Pott* v. *Eyton*, 3 C. B. 42; *Ex parte Rowlandson*, 1 Rose 89; *Smith* v. *Watson*, 2 B. & C. 401; *Higbee* v. *Burge*, 9 C. B. 431; *King* v. *Dodd*, 9 East 527; *Turner* v. *Bissell*,

14 Pick. 192; *Dickinson* v. *Roberts*, 12 Pick. 74; *Denny* v. *Cabot*, 6 Pick. 82; *Bailey* v. *Clark*, 6 Pick. 374; *Blanchard* v. *Cooledge*, 22 Pick. 164; *Walden* v. *Sherburn*, 15 Johns. 409; *Oakley* v. *Aspinwall*, 2 Sandf. S. C. 7; *Hodgman* v. *Smith*, 13 Barb. 302; *Katskill Bk.* v. *Gray*, 14 Barb. 471; *Kellogg* v. *Griswold*, 12 Vt. 295; *Hastings* v. *Hopkinson*, 28 Vt. 108; *Pierce* v. *Alexander*, 2 Green (Iowa) 427; *Maltby* v. *Jones*, 3 Iredell 144.

Though the law allows parties to regulate their concerns as they please in regard to each other, they cannot, by any secret arrangement among themselves, control their responsibilities to others; and it is not competent for a person who partakes of the profits of a trade, however small his share of those profits may be, by any private or secret agreements between the parties, to withdraw himself from the obligations of a partner. *Waugh* v. *Carver*, 2 H. B. 235; *Cheap* v. *Cramond*, 4 B. & A. 663; *Hoare* v. *Dawes*, Doug. 371; *Wightman* v. *Townroe*, 1 M. & S. 412; *Perry* v. *Randolph*, 6 S. & M. 335; *Bank* v. *Monteath*, 1 Denio 402; *King* v. *Dodd*, 9 East 527; *Ex parte Rowlandson*, 1 Rose 89; *Ex parte Gillar*, 1 Rose 197; *Ex parte Wheeler*, Buck 48; 1 Smith's L. C. 363; 3 Kent Com. 32.

The question as to the person on whom the responsibility of a partner ought to attach, in respect to third persons, arises in the case of dormant partners, who participate in the profits of a trade, and conceal the relations in which they stand to the business and to their fellows. Such parties are equally liable when discovered and the facts shown, as if their names had appeared in the firm, and although they were not known to be partners at the time of the creation of the debt. 3 Kent Com. 31; *Robinson* v. *Wilkinson*, 3 Price 538; *Grace* v. *Smith*, 1 H. B. 48; *Pitts* v. *Waugh*, 4 Mass. 434; *Loyd* v. *Archbold*, 2 Taunt. 324; *Boardman* v. *Keeler*, 2 Vt. 65; *Etheridge* v. *Binney*, 9 Pick. 272; *Loyd* v. *Ashby*, 2 C. & P. 138.

Bromley *v.* Elliot.

As the law is designed to protect third persons against the frauds which might be practiced, if *secret* agreements were allowed to be binding on third persons, it holds all parties entering into such agreements to share profits liable as partners. But this liability depends, where the real agreement of the parties as between themselves is that they shall not be partners, upon the point of its secrecy. Because, as the parties are bound by their own stipulations as between themselves, so all who deal with them are equally bound by them, if, at the time of their trading or contracting with the parties, or any of them, they know the nature of their agreements with each other. *Ensign* v. *Wands*, 1 Johns. Ca. 171; *Hastings* v. *Hopkinson*, 28 Vt. 108; *Guidon* v. *Robson*, 1 Camp. 302; *Alderson* v. *Pope*, 1 Camp. 404, n.; *Hind* v. *Rigg*, Man. Dig. 273; *Perkins* v. *Carruthers*, 3 Esp. 248; *Wayland* v. *Elkins*, 1 Stark. 272; *Champion* v. *Bostwick*, 18 Wend. 186.

Indeed, it is not necessary that they should actually know, or have been fully informed, of the real or supposed partnership agreements. They will be equally bound if they have been informed of such facts as should have led a reasonably prudent and cautious man to make inquiry. *Pinson* v. *Steinmeyer*, 4 Rich. 309; *Town* v. *Hendee*, 27 Vt. 258; *Livingston* v. *Roosvelt*, 4 Johns. 251; *McIvor* v. *Humble*, 16 East 169; *Barfoot* v. *Goodall*, 3 Camp. 147; *Irby* v. *Vining*, 2 McCord 379; *Mowatt* v. *Houtland*, 3 Day 353.

This seems the only exception which can be admitted to the general rule, that he who shares profits must share losses and responsibilities, with safety to the public, or to those who deal with such parties. And under this exception will be found to range themselves a very large proportion of the cases where, upon one apparent ground and another, parties who were by their agreement to share profits, have been held not chargeable as to third persons, as partners.

By the facts laid before us in this case, the parties were to share in the profits of all the business done in the store kept by Hovey, as well the profits of the goods furnished by Elliot as of those purchased by Hovey. Under the general rule in *Brown* v. *Robbins*, they were chargeable as partners.

They do not come within the exception we have stated, as there is no evidence that the plaintiffs had any knowledge of the actual agreement; and, as the business was all done by Hovey in his own name, there is no circumstance disclosed which was calculated to excite a suspicion, much less to put them on inquiry, whether some one else was not interested in the profits of the business. Upon our view of the law, the defendants were, therefore, chargeable as partners.

It is contended in argument, that the rule laid down in the case of *Brown* v. *Robbins*, if true at all, is true only in the most general sense, and that there are exceptions and qualifications which include the present case.

Thus, it is said, they must share the profits as profits, to render them liable. The principle, thus cited, rests on a distinction long since disapproved as too thin to be satisfactory. *Ex parte Hamper*, 17 Ves. 404. If so absurd and groundless a doctrine were to be recognized as law, it would not reach this case, since it is expressly agreed that " the net income, after paying the expenses of the concern, is to be equally shared between the contracting parties." This is, in our view, nothing less than sharing the profits of the business, as profits.

It is evidently the net profits which are to be thus divided, and not the gross profits ; which it has been attempted, in some cases, to make a test to distinguish the cases where a partnership liability attaches, and where it does not. The term " net income" cannot be understood to mean *gross profits*.

Again it is said, that a person may receive a *share* of the profits of a business, by way of salary or compensation for services, without being held liable as a partner to third persons. This principle has not been adopted here ; and, unless received with the qualification that the true character of the agreements between the parties is made known to those who may have dealings with them, or the apparent relations of the parties are so evidently those of principal and agent, or rather of master and servant, that no person could be misled or defrauded in consequence of the connection, it seems to us it would be of most unsafe and dangerous tendency, and wholly unfit to be adopted.

But, if such a rule was established, it is not conceived that this case would fall within it. It was not a case where Hovey was to furnish merely his personal services, since it was expressly agreed that he was to furnish the store ; and Hovey was also expressly authorized to procure and add to the stock furnished by Elliot such goods, and to such value, as he should think proper ; the profits on the sales of which were to be accounted for and divided in the same manner as those on the goods furnished by Elliot.

Hovey, by the agreement, is not to stand, as to any of these goods, in the relation of a clerk or salesman to Elliot, or in any way as his servant. He is not to appear as mere broker or commission dealer, transacting the business of another ; but he is to be presented as the principal merchant, proprietor of the goods, dealing on his own account and credit, and transacting the business for his own profit. Elliot furnished a capital, and retained a control for his own security, but he stands apart and is not seen by the world to have any interest or connection with the business. We cannot believe that, in any court where the doctrine to which we have referred is adopted, it would be held to apply to a case of this kind, unless they are prepared to reject entirely all the received doc-

trines as to the liability of dormant partners, or to adopt the broad rule that " no partnership will be created as to third persons, if the whole transactions are clearly susceptible of a different interpretation, or exclude some of the essential ingredients of a partnership;" as laid down by a plausible writer, but often superficial thinker, which fall little short, if at all, of the doctrine that no persons will be liable to third persons as partners, unless they are partners as between themselves.

To us it is a settled matter that dormant partners, who participate in the profits of the trade, and conceal their names, are equally liable, when discovered, as if their names had appeared in the firm, although they were unknown to be partners at the time of the creation of the debt. 3 Kent Com. 311; *Robinson* v. *Wilkinson*, 3 Price 538; *Grace* v. *Smith*, 1 H. B. 48; *Pitts* v. *Waugh*, 4 Mass. 438; *Loyd* v. *Archbold*, 2 Taunt. 324; *Boardman* v. *Keeler*, 2 Vt. 65; *Etheridge* v. *Binney*, 9 Pick. 272; *Loyd* v. *Ashby*, 2 C. & P. 138.

The present seems to us precisely a case of this kind. By their agreement, Elliot was to furnish the capital; Hovey to furnish the store, and to transact the business in his own name, with power to purchase in his own name any additional goods he chose; and, after deducting the expenses of the business, excepting Hovey's services, the net income and profits of the whole business (except some musical instruments) were to be equally divided between them—Hovey transacting the business in his own name and for his own benefit, apparently, while Elliot kept out of sight, but shared the profits.

It is not to be believed that in any jurisdiction a party who, without knowing or having any reason to suspect that any third person had any interest in the business, or any private bargain with the apparent owner, had given him credit, and upon discovery of the fact that the person he dealt with was a mere clerk without responsibility, had

brought his action against the agent and the owner as partners, could be defeated on the ground that the agent sharing the profits received them only as wages, or a compensation for services.

The doctrine that when the private agreements of parties are so drawn as to exclude some of the essential ingredients of a partnership, the parties shall not be charged as partners as to third persons, would overturn at once all the doctrines of the courts of common law for centuries; and though the courts, under the pressure of cases of individual hardship, from the general rule, have occasionally decided such cases upon slight, and subtile, and unsatisfactory grounds, there is no case, so far as we can find, which has in terms adopted, or sanctioned, or approved any such doctrine.

The decisions in a few recent cases have tended very strongly towards such a rule; but they all have been decided upon other and entirely distinct grounds. When a principle like this is generally received, it is apparent that fraud must have the widest scope, or the courts must be forced to protect the community by a new set of rules and distinctions, to supply the place of the wholesome principles maintained in all past times by courts of justice.

The case of *Newman* v. *Bean*, 21 N. H. (1 Fost.) 93, is cited in the argument to the position that where A. was to furnish goods to B., to sell as his agent, and B. might fill up the store with articles that would sell at a profit, the profits, after paying expenses, to be divided, the parties would not be held partners as to third persons. It is erroneously cited to this point. The action was trover by A., who furnished the goods, against the sheriff who attached the goods as the property of B. It was held that they were not partners as between themselves, and that B. had no property in the goods.

The same remark applies to the similar case of *Judson* v. *Adams*, 8 Cush. 556. The decision relates to the ques-

tion of partnership between the parties, and not as to third parties, and as to the property of goods manufactured by one person from the stock of another for a share of the profits.

The case of *Gibson* v. *Stevens*, 7 N. H. 352, has no tendency to show that parties sharing profits are not partners as to those who deal with them. It merely decides that if they are partners, they are not necessarily the owners of the property employed in their business.

The question whether these parties are to be deemed partners as to third persons, must of course be entirely superceded, if it should prove on examination that they were in fact to be regarded as partners between themselves. Ordinarily, the two leading principles of the contract of partnership are a common interest in the stock of the company, and a personal responsibility for the partnership engagements; and both these seem to have been studiously avoided, it being obviously intended that each should continue to own the goods he placed in the store, and that the responsibility for all agreements made in the course of the business should rest on the party who made them.

But though each party must bring into the common stock something that is valuable, yet it is not necessary that there should be any property owned in common, to constitute a partnership.

If one person advances funds, and another furnishes his personal services and skill in carrying on a trade, and is to share in the profits, this constitutes a valid partnership; neither is it essential to a partnership that it be confined to commercial business. It may exist between attorneys, conveyancers, mechanics, owners of a line of stage coaches, artizans, or farmers, as well as between merchants. It may as well exist between brokers, and factors or agents, whose sole employment relates to the property and business of third persons, as among those who jointly own the prop-

erty in which they deal. There can be no valid reason why, in such case, the ownership of the goods in which a partnership deals, should not belong to one of the partners exclusively, just as well as it might to a stranger, without in any way affecting the validity of the partnership. The essence of the contract is that they should be jointly concerned in profits and loss, or in profits only, in some honest and lawful business—the relation of partners being established by the fact that they share the profits between them. They are bound as partners to third persons, by all agreements within the apparent scope of the business in which they are engaged, unless the limitations of their contracts are known to those with whom they deal, or are such as from the facts known to them, they are bound to enquire. But, as between themselves, their stipulations, so far as they are not forbidden by law, are binding; and we know of no rule by which persons are forbidden to be partners, as to the profits of a business carried on by them jointly, though as to all the property employed in the business, they may be several owners. Such seems to be the character of the trade of these parties. Each was to be owner of the stock employed in the business which he had furnished, while they were sharers of the profits alone.

In such case the partners would not be liable for each other for any goods purchased by either to be used in the trade, when the seller was aware of the real nature of their partnership agreements.

But the case would be otherwise as to those who know nothing of their being in any way partners, and as to those who know the fact of a partnership, but know nothing of the precise stipulations between them. As to these the private agreements form no test of the liability of the partners. The legal test is found in the apparent scope and character of the business. Here the apparent scope of the business transacted by Hovey was the trade in

watches, jewelry, &c., implying the buying and selling of that class of goods. That is the business evidently contemplated by their written agreement, and all bargains within the scope of that trade, when a partnership, however limited, is once proved, were as binding on Elliot as they were on Hovey himself.

The policy of the law is, we think, clearly shown in relation to this subject by the statute providing for limited partnerships, passed July, 1855—almost a year before the contract here in question was made—by which persons are permitted to invest their funds in trade as special partners, ·without personal liability, on compliance with certain conditions, the chief object of which is to secure entire publicity as to the fact and the principal terms of the connection. Upon the doctrine before referred to, in the extent which it is claimed to have, such a law must be idle; allowing that to be done under onerous and troublesome conditions which the law already allowed to be done without them.

It seems to us impossible to regard this in any other light than as a secret and dormant partnership, and the parties must both be held liable as partners for the debts in suit.

An objection was made to evidence given by Elliot and Hovey. So far as their testimony tended to give a construction to the written contract, and to show the intention of the parties in it, it is clearly inadmissible as tending to explain or vary a written contract. In the view we have taken of the case, this does not seem to be of much importance.

*Judgment on the verdict.*