Hon. LUKE P. POLAND, ⎫
Hon. ASA O. ALDIS, ⎬ Assistant Judges.
Hon. JAMES BARRETT, ⎭

## CHAPMAN, LORD, WRIGHT & CO. *v.* DEVEREUX & NOYES.

### *Partnership.*

A and B were two accredited agents of the New England Protective Union, A for the making of purchases, and B for the selling of produce. By the rules of the association, all purchases were required to be for cash, and not on credit; and this rule was known to both plaintiffs and defendants. A purchased from the plaintiffs, goods to the value of nine thousand dollars, on credit, but without the knowledge of B; *Held,* that no partnership existed between A and B, by which the latter could be compelled to pay the debts incurred by the former, for the purchase of goods on credit, without B's knowledge, in violation of the express terms of the partnership, known to the plaintiffs, and in the absence of any fraud or deception practised upon them.

When no credit is given, and no expectation, originally, of looking to one partner for debts incurred by the other, no recovery against the former can be had.

Where C, the plaintiff, trusted A, one of the defendants, who were partners, in violation of the rule of the partnership, which C ought to have or might have known by inquiry, and in the absence of any deception, he cannot look to B, the other partner, for payment of his debt, because such debt was contracted without the scope of the partnership, and upon the individual liability of A.

Partnership defined to be a joint interest in the net profits of an adventure or business, or in the profits as affected by the losses.

BOOK ACCOUNT. The auditors reported the following facts:

The two defendants were the accredited agents, in Boston, for the New England Protective Union, Devereux for making purchases of goods, and Noyes for selling produce. They entered upon the duties of their respective agencies about the beginning of the year 1853, and continued until 1857, during which period, and after the beginning of 1856, the plaintiff's account accrued.

They were accustomed, respectively, to charge and receive commissions on their sales and purchases, which were fixed by the board of trade at three-quarters of one per cent. on all purchases for subdivisions, and two and one-half per cent. on all sales made for them.

Devereux succeeded one Kaulback as purchasing agent, and at the time purchased of Kaulback a store of goods, and gave him a note for part of the price, signed Devereux & Noyes.

Devereux & Noyes jointly hired a store in Boston, which was occupied for the business of the central agency there, from 1852 to 1857, and also a cellar. Noyes occupied two stories of the store in the produce department and the cellar. The sign over his door was "Wm. P. Noyes," and Devereux had his name over his door, and across the whole building was the sign, "New England Protective Union." Each did the business of his department in his own name. Each hired and controlled the help in his own department.

Devereux, in making purchases generally, and always with the plaintiffs, furnished his own bill heads, debiting the Division in question to himself, which by the vendor were filled up with the list and prices of the articles, and sent to the Division from

which the order came, and the goods, in case of a credit, were charged to such Division. Devereux then gave his receipt for the bill, and it was charged to him by the seller and by Devereux debited to the Division, according to the bills already forwarded.

But the constitution and by-laws of these associations required in all cases cash payments, and no credit, and this was known to the plaintiffs, and to both defendants, and the practice of posting the bills to Devereux, instead of demanding cash, was in violation of his duty as purchasing agent, whether the credit was long or short.

From 1853 to 1855 Devereux dealt with the subdivisions out of the store in filling orders, and on the 1st of February, 1855, the store was transferred to Noyes, without being moved, and after that Devereux purchased of Noyes to fill orders of the Divisions, the same as of other parties. The stock of goods during all the time was replenished by the use of funds arising in the business of the agency. At the time of the transfer of these goods from Devereux to Noyes no charge was made to Noyes, and no credit given by him on his books for them. Neither Devereux nor Noyes put any funds into the business except what arose from the agency.

From February, 1852, until 1854, Noyes paid over the money received on sale of produce to the cashier in Devereux's department, unless otherwise ordered by the consignors, and he also paid over to the same cashier the avails of consignments outside of the Protective Union, and the amount was by him paid to the consignors. Noyes during this time kept no account at bank.

The larger part of the expenses of both departments, including rents, repairs, fuel, wages to clerks and laborers, insurance on goods, etc., were paid by this same cashier, and no separate accounts kept. Insurance on goods in the store was made in both departments to the defendants jointly. Both parties used coal from the same pile, without any account. The same cashier paid sundry accounts against Noyes between February, 1853, and February, 1855, for oil, paper hangings, soap, tobacco and boots, and for wages of clerks, some of whom made their bills in the name of Devereux & Noyes, but it did not appear that this was known to Noyes.

Immediately after the appointment of Devereux as purchasing agent it was understood between him and Noyes that the commissions in both departments should be equally divided.

It was then understood by them that the business was to be done for cash and not on credit, according to the rules of the association, and it did not appear that Noyes, at any time during the period of the business, had any knowledge that Devereux had purchased goods in his department on credit, or that the plaintiffs had sold him on time upon the strength of Noyes' credit. But it did appear that Devereux and his clerks, in making purchases of the plaintiffs and others, represented that Noyes was a partner of Devereux, but the plaintiffs never, at any time, made any claim of liability against Noyes until this suit, and. there was no evidence that Noyes had any knowledge that he had been represented as Devereux's partner.

All purchases of the plaintiffs by Devereux were on thirty days' time, which they did not regard as on credit. The plaintiffs' claim was about nine thousand dollars.

Upon this report, the county court, at the September Term, 1859,— PIERPOINT, J., presiding,— adjudged, *pro forma*, the defendants to be partners, and rendered judgment for the plaintiffs for the amount of their account, to which the defendants excepted.

*M. G. Cobb* and *Briggs & Nicholson*, for the defendants.

*E. J. Phelps* and *Linsley & Prout*, for the plaintiffs.

REDFIELD, Ch. J. The general principles of law affecting this case are not much controverted. But there is a most unquestionable conflict in the decisions of the courts in regard to their application to particular cases. It was decided in this court, in *Brigham* v. *Dana*, 29 Vt. 1, that persons jointly interested in the net profits of an adventure or business, or in the profits as affected by the losses, are partners. And the same point was so ruled by this court much earlier, in the case of *Kellogg* v. *Griswold*, 12 Vt. 291, and in a recent very able judgment of MET-CALF, J., in *Fitch* v. *Harrington*, 8 Law Register, 688. Chief Justice MARSHALL, in *Winship* v. *The Bank of the United States*,

5 Peters 529, uses language to the same effect: " One who shares in the profit, although his name be not in the firm, is responsible for all its debts." The distinguished Chief Justice uses another form of expression in this connection, which may be found to have some application possibly to another portion of this case : " A partner, certainly the acting partner, has power to transact the whole business of the firm, WHATEVER THAT MAY BE : [but surely nothing beyond that,] and, consequently, to bind his part- ners to such transactions as entirely as himself."

This seems to bring out the prominent inquiry or inquiries in this case.

I. Was there any credit given in this case to Noyes?

II. If not, were the plaintiffs ignorant, at the time of the credit, of Noyes' true relations to Devereux, and to this purchase on credit ?

III. Was there any such connection between the defendants, in any portion of their business, as to create a strict partnership between themselves ?

IV. If so, was this credit so far within the range of the con- templated business of the firm, either as originally constituted, or subsequently extended, by the consent or with the knowledge of Noyes, as to render Noyes liable to the plaintiffs ?

The law of the case will best be discussed further in connec- tion with the answer to these several inquiries, and the leading facts found in the case.

The facts in this case are very imperfectly and somewhat indefi- nitely reported. We presume the auditors could have answered some questions, incidentally affecting the case, much more satis- factorily than this court. But as the auditors and the county court have seen fit to send the case here on this report, with a *pro forma* judgment for the plaintiffs, we must dispose of it with the best lights which we can obtain, or remit such questions to the auditors as seem not satisfactorily answered by the report.

1. We understand that while the account was accruing, the plaintiffs were told by Devereux or his clerks that Noyes was a partner. This was while the transaction was passing, and while the plaintiffs might have learned all the facts of the true relations between the defendants. They could certainly have learned, upon

the slightest inquiry, in the immediate vicinity of their own place of business, how the business of this double agency was conducted. They might probably have learned everything now shown in the case, unless it was the fact that the defendants had agreed to divide the profits of the two agencies equally. And there is nothing in the case to show that even that was intended to be kept secret. It would rather seem from the manner in which the business of the agency was conducted, that even the division of the profits was not kept secret.

2. We understand that the plaintiffs gave the credit to Deyereux, took his receipt for the bills, and posted the account to him, and made no claim that Noyes was responsible to them in any way, until the commencement of this suit.

3. Under this state of the case it seems to us the plaintiffs must show that, by contract between the defendants, Devereux was justified in obtaining the goods of the plaintiffs on the credit of Noyes, or that some fraud was practised in the case.

Short of that it does not appear to us the plaintiffs have any just claim to hold Noyes responsible. For they either knew or might readily have learned all the facts in the case, and still after hearing the suggestion that Noyes was a partner, they continued to deal with Devereux as the sole party in interest, to give credit exclusively to him, and to make no claim whatever upon Noyes. Upon what ground then, is it competent for the plaintiffs now to hold Noyes liable?

We readily perceive that, to a certain extent, a partnership did exist between the defendants as to their business in the agency, and probably in the store of goods which was kept in connection with the agency, sometimes by one party and sometimes by the other. But even in this view, we do not understand that the purchases of the plaintiffs came fairly within the range of the copartnership business. The agency certainly did not authorize the purchasing agent to buy on credit. The very fundamental principle of the whole scheme of these protective unions, we understand, is that they shall not buy upon credit, but for money in hand. And although, by a kind of false gloss, the merchants and other traders and business men in Boston, and some other cities, probably, have got up some conventional arrangement

among themselves by which they agree that a sale or purchase on thirty days' indulgence shall not be regarded as upon credit, but a cash transaction, this certainly does not make it so in fact. If any term of credit is not credit, then no term of credit is credit, and the very import of the term is abolished and expunged, and the thing becomes impossible. We know that usage and custom will accomplish almost anything except impossibilities. But when it proposes to change the import of language it does not thereby change the nature of things. This same absurd attempt to convert a credit of thirty days into no credit at all may be turned against the plaintiffs as well as in their favor. If thirty days' indulgence is cash in hand, then, of course, the plaintiffs gave no credit to any one, and have no claim against any one, because, forsooth, a credit of thirty days is cash in hand, and by consequence no credit was given, and no debt was created, the plaintiffs were paid for their goods at the time of delivery, and have no occasion and no claim to maintain this action against any one.

This court held this pretended custom void in *Catlin* v. *Smith*, 24 Vt. 85. We have no occasion to say more about it. It was undoubtedly a credit, but, as we have before said, clearly a credit to Devereux and not to Noyes.

We think, too, it is equally obvious that the plaintiffs must be regarded as having knowledge, either in fact of the whole transaction and of the true relation between the defendants as to the manner of transacting the business of the double agency, or else that they had such knowledge as was ample for putting them upon inquiry, and that such inquiry would have resulted in the discovery of all the facts substantially as they existed. This being so, the plaintiffs are affected with the knowledge of all the facts which existed, and which upon reasonable inquiry might have been ascertained. So that in this view of the case the plaintiffs must be regarded as having elected to give credit to Devereux alone, treating the credit as so short and so much in the nature of ready pay, that they probably regarded the responsibility of Devereux as sufficient.

But, in addition to this, it seems to us that from the fact that the plaintiffs appear to have been one of the principal houses

Chapman et al. *v.* Devereux et al.

where the purchasing agent of this New England Protective Union dealt, (we infer this from the amount of business done with them, and the fact that it extended over a considerable period,) from these facts, then, and the general notoriety of the no credit basis of these protective unions, it seems to us fair to conclude that the plaintiffs must be affected with notice in fact that this purchasing agent was to purchase only for ready pay, and that he was not therefore justified in obtaining credit; and that although we recognize the defendants as partners, to a limited extent, that is, so far as the agency and the store are concerned, as we probably should be inclined to do, it will not entitle the plaintiffs to recover of Noyes.

The case in this last view will come within the principle of those cases where the party giving credit to one partner, knowing there are others in the same house, knows, also, that the credit is not justified by the terms of the association and the expectation of the other partners. As, for instance, where there are two houses having some members in common and others distinct. One who gives credit to the active partner, in one house, for goods going to that house, cannot hold the members of the other house responsible. Or, when a partnership exists where, by articles of association, the business is to be transacted without credit, and this is known to one who gives credit to one of the partners, or even to the whole house, upon the representation of one member that it will be paid shortly, the creditor knowing at the same time, that, by the articles of association, and the expectation of the other partners, no credit is to be obtained, such person cannot recover of the other partners. This is familiar law upon both points; Story on Part. sec. 128, *et seq.* Here it is laid down as clear law, that if the person dealing with one partner, although the business come fairly within the range of the partnership, yet if the creditor knows, at the time of giving credit, that the articles of association do not justify the sale on credit, or not upon the credit of all the partners, and that the other partners do not expect to be liable for any such contract, and are not to become liable, as between themselves, he cannot bind them, notwithstanding the creditor may have an implicit expectation that he shall thereby obtain the responsibility of the firm, and may even make

his contract in the name of the partnership. This point was expressly decided by this court in *Hastings* v. *Hopkinson*, 28 Vt. 108.

So, also, in regard to the other point it seems equally well set-tled, that if the contract is made with one partner and in his name alone, the creditor knowing of the partnership at the time, if it turns out that the partner was not justified in making the contract on behalf of the firm, they are not responsible, and this is so, notwithstanding the creditor might have entertained an implicit expectation that the firm would consent to be liable to him, or were in fact liable; Story on Part. sec. 154; Collyer on Part. B. 3, ch. L. sec. 2.

If, then, we assume that a partnership *quoad* the agency, and the store of goods, did exist between the defendants, and this is the most which can be claimed, as the utmost which the testimony tends to prove, it is still obvious that as to the agency there was nothing, either in the constitution and by-laws of the union, or in any presumed understanding between these partners growing out of the previous mode of transacting the business, which would justify Devereux in purchasing goods for the Divisions upon the credit of Noyes. So far as Devereux and Noyes were concerned, very likely Devereux, from the fact of being a partner of Noyes, might do this to the extent of the partnership business, so far as third persons were concerned, who were wholly igno-rant of the extent of his authority, and so might purchase of those who did not understand the laws of this agency and the extent of the connection between the defendants, and do this on the credit of the firm. But that is not the case of the plaintiffs.

They have such knowledge upon the subject that they should be content to stand upon the actual authority of Devereux, as between himself and Noyes. And here it does not seem to us, as the case stands in this court, there is any good ground to claim that Devereux had any express or reasonably implied authority to bind Noyes to this credit.

It does not appear to us that the plaintiffs had any such belief or expectation at the time, or, if they had they certainly elected to give credit exclusively to Devereux, and that would release Noyes from all legal or moral obligation in the matter.

We do not perceive that any such facts were kept from the knowledge or possible apprehension and discovery of the plaintiffs as will justify this court in saying that a virtual fraud was thereby practised upon them, and thus enabled them to go against Noyes, as well as Devereux, upon that ground.

We feel compelled, therefore, as the case stands before us, and with the best lights we can obtain from surrounding circumstances, to say that it seems to us the plaintiffs have not shown any satisfactory grounds for claiming judgment against Noyes.

The result of our investigations has been to answer the inquiries we at first proposed in such a manner as not to entitle the plaintiffs to recover of Noyes. It will have been perceived that as we construe the facts found by the auditors :

1. There was no fraud or deception practised upon the plaintiffs. They knew or had the means of learning all the facts in the case important to their interest.

2. They gave no credit to Noyes, and had no expectation originally of looking to him for pay.

3. The relation of partnership, if any, which existed between Devereux and Noyes, only extended to the store of goods and the conduct of the agency, according to its legitimate terms.

4. The dealings of the plaintiffs, so far as any credit was given to Noyes, did not come fairly within the scope of the partnership, as in fact made or as understood by the plaintiffs.

5. The plaintiffs' account having accrued neither in supplying the store nor in supplying the purchasing agent, in buying according to his duty and the terms of the partnership, they cannot claim to hold Noyes by the terms of the partnership.

6. They cannot claim to hold him on the ground that the scope of the partnership was enlarged by his acquiescence so as to allow Devereux to buy for the Division on his credit, or that of the firm, since the plaintiffs were aware that this credit was without the limits of the legitimate business, both of the agency and the partnership, and were themselves as much in fault as any one, in suffering the extension, and far more so than Noyes, and it was evidently suffered by the plaintiffs with the full knowledge and expectation that they could look only to Devereux.

41.

---

As we construe the facts reported, and we see no reason to question their correctness, the plaintiffs have no claim either in law or justice to now hold Noyes responsible for their claim.

We must, therefore, reverse the judgment, and enter up final judgment for the defendants.