W. C. SMITH *v.* O. A. BURTON AND E. A. SOWLES.

*Subscription. · Parol Evidence. Letter. Contract.*
*Partners.*

1. A subscription contract, plain and complete in itself, to pay money in aid of a contemplated manufacturing business, cannot be enlarged, varied or contradicted by a letter, which was simply one of the preliminary negotiations to the subscription.

2. A subscription contract contained several conditions, and the only one relating to the subscribers had been fulfilled; but some of the other conditions relating to other parties had not been fulfilled; *Held,* that the subscriptions were enforceable.

3. The plaintiff signed a subscription paper agreeing to pay the defendants, B. and and S., $500 to aid a contemplated business, of which M. was the proprietor, and in which they were interested by reason of loans to M. The plaintiff also furnished labor and supplies to M., and B. told him to charge the same to B. and S. Although B. and S. were not partners, their attitude to the business was apparently a joint relationship; the subscription ran to them jointly, and S. assented that the plaintiff might pay it with said supplies; *Held,* that the plaintiff was entitled, on the facts reported, to a judgment against both for the balance above his subscription.

BOOK ACCOUNT. Heard on an auditor's report, September Term, 1886, ROYCE, Ch. J., presiding. Judgment *pro forma* and without hearing for the plaintiff to recover the larger sum found due by the auditor, which was $628.55. But the auditor found that if the subscription was applied on the account there was due only $18.05.

The master found in part:

" On January 10, 1881, a subscription paper was drawn up to be circulated in St. Albans and vicinity, which was in the words and figures following, viz. :

'We the undersigned hereby agree to pay the several sums affixed to our names respectively, to Oscar A. Burton and E. A. Sowles, payable in three equal installments at three, six and nine months, for the purchase of the Tremont House, and the appurtenances and premises thereunto belonging, formerly owned and occupied by S. S. Skinner, and for giving a suitable title thereto to James MacDonald, Jr., doing business under the name and style of the Glens Falls Shirt Company, on condition that Oscar A. Burton and E. A. Sowles and his wife, Margaret B. Sowles, shall convey said property to George W. Foster, trustee for said MacDonald, on six thousand dollars being subscribed hereto, awaiting the fulfillment of the conditions hereinafter contained or imposed upon said MacDonald, doing business under said name and style, to wit: That said MacDonald shall remove his or said Glens Falls Shirt Company's collar, shirt and cuff manufacturing business from Glens Falls, N. Y., to St. Albans, Vermont, and establish the same at the said Tremont House premises, and so continue to use said premises for such purpose aforesaid for the term of five years, and work at least from three hundred to eight hundred hands as the business may seem to require, and as said MacDonald, under the name of The Glens Falls Shirt Company, has done for the past year at Glens Falls, N. Y., and to transact said business at St. Albans under the like style and name of the Glens Falls Shirt Company, as per agreement in writing. The said Burton and Sowles, for the purpose aforesaid, valuing said property at $10,000, and proposing to convey the same on said sum of $6,000 being subscribed, they are herein considered and treated as contributing $2,000 each. In case of default on the part of said MacDonald in establishing and maintaining said business for the period of and as aforesaid, the said trustee shall convey said property as follows: The undivided four-tenths thereof to said Sowles and Burton, and the remaining undivided six-tenths thereof to us, the undersigned, in proportion to our respective subscriptions.

'Dated, January 10th, 1881.'

" On February 3, 1881, the plaintiff, who had been applied to to sign said subscription paper, wrote a letter to the defendants, which was as follows:

'St. Albans, Vt., February 3d, 1881.'

' Messrs. O. A. Burton and E. A. Sowles.

' Gents: I am not disposed to sign the last form of sub-

scription for the purchase of the Tremont House property to be used as a factory by The Glens Falls Shirt and Collar Company for reasons that I will state when I see you, and which I think you will approve. I will, however, agree to pay the amount of my subscription of five hundred dollars, one-half in one year and one-half in two years, without interest, conditioned upon the fulfillment by the shirt company of their undertakings. Yours, etc.,

'W. C. SMITH.'

"To that letter the defendant Burton replied, by letter of the same date, as follows :

'Hon. W. C. Smith.

'D. Sir : I want you to sign the subscription for the purchase of the Tremont—five hundred dollars—and I will take care of the same—and you pay in the same way and upon the same condition as J. Gregory Smith is to pay, one-half in one year and one-half in two years, provided he runs the factory as he has agreed for that length of time, and without interest. Yours truly,

'O. A. BURTON.'

"Immediately after receiving said Burton's letter the plaintiff did sign said subscription paper, and set against his signature the sum of $500. Said subscription paper was also signed by others, and the aggregate of the subscriptions made upon it was $3,915. *   *   *

"Upon testimony seasonably objected to by the plaintiff's counsel as irrelevant, I find that J. Gregory Smith agreed to give toward the shirt factory enterprise mentioned in said subscription paper $1,500, and of that sum afterwards paid $1,000 ; but it did not appear that such agreement was in writing ; that Aldis O. Brainerd and a Mr. Seymour, each, by a letter, or a short writing, agreed to give towards said enterprise $300 ; and that said agreements of J. Gregory Smith, Brainerd and Seymour were not upon, or did not contain, the same conditions stated in said subscription paper. Said sums agreed to be given, together with the subscriptions made upon said subscription paper, amount to more than $6,000.

"On February 5, 1885, and after all said subscriptions and agreements to give had been made, the said defendants, and Margaret B. Sowles, the wife of the defendant Sowles, by a deed of that date duly executed, conveyed said Tremont House

property to George W. Foster, trustee. Said deed contained the following declaration of trust, namely :

' This conveyance is made to said George W. Foster, trustee aforesaid, in trust however, for the uses and trusts and purposes as follows, to permit James MacDonald, Jr., doing business under the name and style of the Glens Falls Shirt Company, and his assigns to use, occupy and enjoy the same, to wit, said above described premises, for the manufacturing, laundering and selling shirts, cuffs and collars and underwear for a period of five years from and after the 15th day of February, 1881, and at the expiration · of said period convey said property and premises in fee, discharged of said trust, to said James MacDonald, Jr., now of Glens Falls, New York, doing business under the name and style of the Glens Falls Shirt Company, his heirs or assigns.

' Said property to be, as aforesaid, conveyed to said Mac-Donald, his heirs or assigns, provided, and not otherwise, that ·the said James MacDonald, Jr., or said Glens Falls Shirt Company shall, during said period of five years, occupy said real estate and premises for said purposes, and work thereon and in and about said business on an average each year during ·the aforesaid term not less than from three hundred to eight hundred hands, as such business may require in the manufacturing and sale aforesaid.'

" I find, upon the testimony of the defendants, taken subject to objection, that at the time of the execution of said deed the defendants accepted the subscriptions made upon said subscription paper, and the said agreements of J. Gregory Smith, Brainerd and Seymour as a full compliance with the condition in said subscription paper as to the amount to be subscribed.

" On said February 5, 1881, an instrument was executed by the defendants and said Foster and MacDonald, in the words and figures following, namely :

' This instrument made the 12th day of January, A. D. 1881, between Oscar A. Burton and Edward A. Sowles and George W..Foster, of the first part, and James MacDonald, Jr., doing business under the style and name of Glens Falls Shirt Company—witnesseth—That the said parties of the first part, in consideration of the sum of one dollar to them in hand paid, and in further consideration of the covenants and agreements hereinafter contained, hereby covenant and agree to and with

the party of the second part to advance to him money in a series or line of loans, on interest at the rate of six per cent per annum, from time to time, as he shall ask and require the same in and about the repairs and alterations of the Tremont building hereinafter mentioned, and in the purchase and putting in machinery, and in transacting and carrying on the business of the manufacture and sale of cuffs, shirts, collars and underwear, to be manufactured at and on said Tremont building premises during the five years next ensuing from the 15th day of February, 1881, so that the whole amount owing at any and all times during said period on said loans may and shall, if demanded by the said party of the second part, amount to the sum of ten thousand dollars. And to take and receive therefor the commercial paper of the party of the second part payable at the First National Bank of St. Albans. That the machinery, fixtures, apparatus and improvements, as well as the personal property used in and about said Tremont premises in the manufacturing and sale of said property herein mentioned shall be and remain the property of said Burton, Sowles and Foster as security for the purchase money therefor, and liabilities hereby agreed to be assumed, as their several interests may appear.

' Said money shall be loaned or procured to be loaned by the parties of the first part in the following proportions, to wit : said Burton and Sowles shall each loan, or procure to be loaned, two-fifths part thereof, and said Foster shall loan, or procure to be loaned, the remaining one-fifth part thereof.

' And in consideration of the premises said party of the second part covenants and agrees to establish, conduct and carry on said business at St. Albans aforesaid, and at the premises known as ' the Tremont premises,' for the period of five years next ensuing from the 15th day of February, 1881, and to so conduct the same under the style and name of the Glens Falls Shirt Company, and work in and about said business on an average each year not less than from 300 to 800 hands as said business may require, and as said MacDonald has during the past year at Glens Falls aforesaid, unless prevented from so doing by damages by the elements, and in case of such loss or damages by the elements that said business shall not be unnecessarily delayed or impeded. And to repay said loans with interest as aforesaid.

' This instrument and every part thereof shall apply to and

Smith *v.* Burton.

bind the heirs, representatives and assigns of the respective parties.

'In witness whereof the said parties have hereunto set their hands and seals the day and year herein before written.

O. A. BURTON,           [L. S.]
E. A. SOWLES,           [L. S.]
GEO. W. FOSTER,        [L. S.]
JAMES MACDONALD, Jr.  [L. S.]

'I hereby agree to accept of the foregoing agreement with all its conditions, and further agree that none of the funds used or advanced for the purposes herein stipulated shall be diverted therefrom in any manner, but the same shall be and remain as surety to the said Burton, Sowles and Foster for all advances made, or liabilities hereafter made or assumed in ·every form until such obligations or liabilities are fully satisfied, and that I will ship to St. Albans and put into said building · and premises machinery and other property to the amount of about thirteen thousand dollars, to be used in the· manufactory aforesaid, upon which said Burton, Sowles and Foster shall have lien and security aforesaid for all liabilities by them assumed in any manner by this agreement.   *   *   *

'February 5th, 1881.

JAMES MACDONALD, Jr.  [L. S.]'

"On February 15th, 1881, said MacDonald went into possession of said Tremont House property, and began to put ·in machinery and make repairs and alterations necessary in fitting up and adapting the premises for the manufacture of shirts, collars, cuffs and underwear: In so preparing the premises and machinery for such manufacture he needed many materials and supplies, and he advised with the defendant Burton as to the best places for procuring them, and was advised by Burton to procure what he could·from those who had subscribed in aid of the enterprise. The plaintiff, when he signed said subscription paper was, and from that time has been the proprietor of the St. Albans Foundry, at which many things required by MacDonald might be obtained. MacDonald sent a few orders to the plaintiff's foundry, which were entered upon the order book as orders from the Glens Falls Shirt Company, and were filled in due course of business. Such orders were received and entered by the plaintiff's employees, and without his personal knowledge. When MacDonald sent those orders he did not intend to run an account at the foundry, but expected that

money would be furnished by the defendants to pay for such things as he should get there. He sent the first order to the foundry February 19th, and the last of said orders which were entered as orders from the Glens Falls Shirt Company were sent on June 3d. Before getting anything more at the foundry he sent word by one of his employees to the foundry that the Glens Falls Shirt Company was not to be responsible for things ordered in fitting up the building and machinery, and that word was reported to the plaintiff. The plaintiff examined the order books, and then sought and had an interview with the defendant Burton, and immediately after that interview he directed the entries of orders given by and charges made to the Glens Falls Shirt Company to be charged, and such orders to be entered as orders from the defendants, and such charges transferred or charged up to the defendants, and all things thereafter furnished for the shirt factory to be charged to the defendants. The plaintiff and the defendant Burton each testified in the hearing before me, and their testimony as to what was said at that interview between them was conflicting. * * * I find that the plaintiff told Burton he did not know MacDonald and did not wish to trust him, and that he was told by Burton to charge whatever should be ordered from and for the shirt factory to the defendants. I also find that at that interview it was agreed between the plaintiff and Burton that the amount of the plaintiff's account for things furnished or to be furnished for the shirt factory might be applied upon the plaintiff's said subscription, and such agreement was made known and was assented to by the defendant Sowles. But I find that the defendant Sowles never in fact authorized or assented to the charging of anything furnished by the plaintiff for the shirt factory to him.

"From the time of the interview between the plaintiff and Burton, which was about June 17, 1881, to April 12, 1882, articles and labor were ordered from the foundry for the shirt factory and charged to the defendants.

"On June 30, 1881, an instrument was executed by the defendants and said MacDonald, which was antedated February 15, 1881, and was in words and figures following, viz. :

'This agreement made and entered into by and between O. A. Burton and E. A. Sowles of the first part and James MacDonald, Jr., of St. Albans, Vt., of the second part, witnesseth: That the party of the first part agrees to stock and

furnish materials and have furnished certain materials now in and about the so-called Glens Falls Shirt Factory, for the manufacture of shirts, collars, cuffs and underwear in said factory in St. Albans as may be necessary to carry on the shirt, collar and cuff business in said factory, and in connection thereof have made certain additions to, and furnish certain machinery, including the engine and boiler now in said shirt factory in their own name, which is to be and remain the property of the said Burton and Sowles as per stipulations and agreement made by the parties. Now, therefore, in consideration thereof, the party of the second part agrees to do the superintending of the business in said shirt factory, and is to draw from the funds and earnings of said factory the sum of one hundred dollars per month, or less if possible, while he continues to perform the services aforesaid, and at the end of five years, after paying whatever sums of money the said party of the first part may furnish or contribute towards the purpose aforesaid by way of purchasing goods or materials, or for manufacturing or otherwise, or whatever of said items or either of them they may have already contributed by way of repairing or furnishing said shirt factory, and after paying all interest or necessary expenses in and about the premises the balance of net profits, after deducting all operating and other expenses in and about said manufacturing aforesaid, and after paying the said party of the first part all indebtedness that the party of the second part may be under to the parties of the first part, shall be paid to Gertrude E. MacDonald at the end of five years as aforesaid.

'And it is further stipulated and agreed by both parties that the party of the first part shall have the right to name and furnish a clerk or cashier who shall be paid for his services out of the proceeds of said business before any deductions aforesaid are made, who shall keep proper books of account of the business aforesaid, make all disbursements of moneys, and receive and receipt for all sales of goods and other property for the parties of the first part, and keep a general oversight of said business on behalf of the parties of the first part and under the direction of the parties of the first part, and said books shall be open to inspection of parties of first and second part, and the parties of the first part shall advance money to keep the premises and all the property herein enumerated fully insured for the benefit of the parties aforesaid, the avails of

which, in the event of loss or damage by fire, shall be paid to the parties in interest in the order aforesaid, and be distributed as aforesaid, and the necessary and contingent expenses connected with the buildings on the premises and the property enumerated aforesaid shall be paid out of the avails of said business and be deducted before distribution is made aforesaid, and if at any time after a fair trial of said business for two years the business shall not be a remunerative one, either party shall have the right to terminate this contract by taking and paying to the other party whatever interest such retiring party may have in said premises.

'St Albans, Feb. 15th, 1881.

O. A. BURTON,      [L. S.]
E. A. SOWLES,      [L. S.]
JAMES MACDONALD, Jr.  [L. S.]

'In the presence of B. C. HALL.'

"On said June 30, 1881, said MacDonald executed to the defendants a chattel mortgage, in due form, of all the personal property in and about said shirt factory, which mortgage was conditioned that said MacDonald pay to said Burton and Sowles $3,412.30, money advanced by them to him, and $6,587.70, which they had assumed for him, or obligated themselves to pay.

"From said June 30, 1881, the defendants did from time to time pledge their credit or furnish money for obtaining such materials and supplies as the business at the shirt factory required, and each tried to effect sales of the goods there manufactured, and make collections for goods sold; but they did not do so for the purpose of building up or carrying on a business for themselves, but did so for the purpose of realizing from the security which they claimed to have upon the shirt factory property and business for the payment of moneys advanced and paid, and liabilities incurred by them under their arrangements with MacDonald.

"The shirt factory was run until about the month of February, 1882, when it was stopped, and the enterprise collapsed and has not been revived. While business was done there as aforesaid the condition of the said subscription paper as to the number of hands to be employed was not complied with.

"On December 29, 1880, J. Gregory Smith wrote to the defendant Burton as follows:

Smith *v.* Burton.

'.St. Albans, Dec. 29, 1880.

' O. A. Burton, Esq.,

' Dr. Sr : On condition that the Glens Falls ·Shirt and Cuff Company locate their manufactory at St. Albans and continue in the manufacture of sd. business for the period of ten years, in conformity with the stipulations and conditions in the agreement presented to me this day, I will give one thousand five hundred dollars as a free gift to said concern, either for the purchase of the Tremont House, or otherwise as you may determine. Yours truly,

J. GREGORY SMITH.

' I consent to the new basis
    of *five* years.

J. G. S.'

" On February 1, 1881, J. Gregory Smith wrote to the defendant Burton as follows :

' St. Albans, Feb. 1st, 1881.

' O. A. Burton, Esq.,

' My Dear Sir : In reply to yours inquiring as to when payment of my donation to the Glens Falls Shirt and Cuff Factory will be made, I would say that my object in making the donation as I did was to ensure the establishing of the factory here, and its continuance in good faith, and according to the terms submitted to me for the period named. If now I can be satisfied it is to be established here, and continued on the basis proposed, I will, at the end of one year from its being put in operation, fully pay one-half of the sum, and if continued in successful operation as proposed, for two years, I will, at the end of two years, pay the other half, both to be without interest. Truly yours,

J. GREGORY SMITH.'

" The writing signed by Brainerd and Seymour is as follows :

' St. Albans, Vt., January 10th, 1881.

' We, the undersigned, agree to pay, the several amounts affixed to our names to the Glens Falls Shirt Company, provided they employ at least three hundred hands at least yearly in the manufacturing shirts, collars, etc., for three years the sum of one hundred dollars to be paid within thirty days after they commence business in the Tremont Hotel, so called, on

27

Smith *v.* Burton.

Main Street, in this town of St. Albans, and one hundred dollars to be paid in one year after the first payment is made, and the last payment in two years after the first payment, making the sum of three hundred dollars. This agreement to be null and void if they do not commence business within six months from this date.

> A. O. BRAINERD,      $300
> H. P. SEYMOUR,          300
>
>          in all.'

"I find that the subscription or donation by J. Gregory Smith was upon the terms stated in said two letters, and that the subscriptions of said Brainerd and Seymour were upon the terms stated in said writing signed by them. All questions as to the legal effect of said letters and writing are referred to the court."

*Farrington & Post*, for Burton.

The subscription paper is a full and complete contract in and of itself. The rights of the subscribers are not varied by the facts, whether 300 or 800 men were employed, or whether MacDonald fulfilled the condition. *Towne* v. *Rublee*, 51 Vt. 62. The letters were written before the subscription paper was signed, and do not change the plaintiff's relation to the contract. *Wing* v. *Cooper*, 37 Vt. 169; 11 Vt. 221. The trust deed was executed with the conditions as set forth. The account prior to June 17th, when the plaintiff and Burton had their talk, amounting to $61.12, clearly should be disallowed. *Fullam* v. *Adams*, 37 Vt. 391; *Cross* v. *Richardson*, 30 Vt. 641.

*E. A. Sowles, pro se.*

The suit is not brought against the defendants as partners, and no claim is made that they are such. Hence, there can be no recovery against Sowles. The plaintiff is bound by the terms of the subscription paper, and must look to the Tremont property for compensation in common with others.

*Noble & Smith*, for the plaintiff.

Burton did and could pledge the credit of himself and Sowles. The whole undertaking was for their joint benefit. The defendants took a mortgage upon the very property for the purchase and improvement of which the plaintiff's account accrued as security for such money and credit. The new contract made with Burton was independent, and not within the Statute of Frauds. *Sinclair* v. *Richardson*, 12 Vt. 33.

All the circumstances and relations of the parties imply an authorization to Burton to pledge the credit of Sowles jointly with his own. *Duryea* v. *Whitcomb*, 31 Vt. 395. "One, who is not ostensibly a joint party, may be held to a joint liability when the trade and business has been carried on for his benefit or in his behalf." 5 Wait Act. & Def. 112.

The plaintiff was never liable on the subscription paper. Subscriptions on certain conditions are never binding until the acts stipulated as conditions are performed. 1 Par. Con. 454; *Williams College* v. *Danforth*, 12 Pick. 541; *Oakley* v. *Morton*, 11 N. Y. 33; *N. Y. Exchange Co.* v. *De Wolf*, 31 N. Y. 273; *Middlebury College* v. *Loomis*, 1 Vt. 212; 3 Ill. 83; 67 Me. 295. The conditions were never fulfilled,—as to the number of men to be employed, or as to the length of time the business was to continue. The subscribers who paid could recover their money. 3 Addison Con. s. 1345; *Norckells* v. *Crosby*, 5 D. & R. 760.

The opinion of the court was delivered by

VEAZEY, J. The plaintiff denies that he is bound by his subscription, because, as he alleges, the conditions of it have not been fulfilled, and because they were modified by the letter of Burton, and the terms of that letter have not been complied with.

Neither of these claims can be sustained.

The subscription paper is not ambiguous but plain and complete in itself, and must be construed by itself independent of the letter. The letter was simply one of the preliminary negotiations to the subscription. To allow the letter to come in as

a modification of the subscription contract would be in violation of the rule that a written contract cannot be enlarged, varied or contradicted by parol testimony. If the letter may be regarded as an indemnity to the plaintiff for signing the subscription it is not available to him in this action.

As to the other proposition of the plaintiff we put this construction upon the subscription contract: The only condition of the subscription was that Burton and Sowles and wife should convey the Tremont property to Foster as trustee of MacDonald. The phrase, "on six thousand dollars being subscribed hereto," was not a condition of the subscription strictly, but a condition in behalf of Burton and Sowles and wife upon which they should convey. They were not obliged to convey until so much was subscribed. The object of the subscription was to secure the Tremont property for the contemplated business and thereby promote the industry; and unless it was conveyed for the purpose the subscriptions would not be enforceable; and if conveyed and MacDonald did not fulfill as therein provided, then the subscribers had security on the property. If the owners were satisfied to convey upon a subscription of less than six thousand dollars the primary object of the subscribers was attained and their security increased, the provision being that in case of default by MacDonald the trustee was to convey six-tenths of the premises to the subscribers; therefore, the less the subscriptions the greater the proportion to go to each subscriber. The provisions in the subscription paper, in respect to MacDonald's obligations, were conditions upon which he would become entitled to said premises, and not conditions of the subscription.

We think this construction of the contract is unmistakably correct; therefore, the plaintiff is bound by it as between him and the defendants. His remedy, if any, is against the trustee and the property, or against Burton on the promise in his letter, or both; but the questions that may arise in that direction are not for consideration here.

If the plaintiff's subscription is to be held enforceable against

him, it is not contended but that it is to apply on the plaintiff's claim against the defendants under the agreement to that effect as found by the auditor. But there is a small balance in addition in the plaintiff's account, and the question is whether that is good as against Sowles as well as Burton. It appears that Burton told the plaintiff to charge the labor and supplies, which he should furnish on MacDonald's orders, to Burton and Sowles, and they were so charged. The auditor finds that Sowles never in fact authorized or assented to this, " or concurred in any arrangement between the plaintiff and Burton any further than is stated in the report, unless a further concurrence results as a legal effect of facts found by me."

We think the contracts between MacDonald and the defendants, stated in the report, should not be construed as conferring upon the defendants respectively any authority to act for each other in borrowing money or pledging credit in the performance of their obligations to MacDonald, as provided in said contracts. The provisions of the first contract strongly tend to negate such authority. The second contract taken alone might possibly bear such construction; but that contract does not appear to have been intended as a substitute for the first one, but rather as supplementary to it; and upon the point now under consideration, it does not appear why the two contracts may not properly be considered and treated as one. But in arriving at what is the legal effect of the facts found by the auditor, on the question of Sowles' liability to the plaintiff, it is proper to consider them in the light of the contract. It is upon the whole report, which contains the contract, that we are to decide the point.

Although Burton and Sowles were plainly not made by the contract partners or proprietors in the shirt business, they became its reliance for money and material, and interested in all the property of the concern as security for such support, and the subscriptions of all others were to go to them, and were so promised in the subscription paper which the plaintiff signed.

Burton was entrusted with the paper to solicit the plaintiff's subscription, and obtained it. His account was for labor and supplies, such as Sowles must have known, situated as he was, the business would demand. He knew the plaintiff was furnishing them, because he assented that he might pay his subscription in that way. Although not made partners or proprietors of the business as between themselves by the contract with MacDonald, the subscription paper ran to them jointly, and their attitude to the business was to appearances a joint relationship as between each other. We think the plaintiff especially had a right so to regard it. True, the auditor says that Sowles never assented to the charges being made to him unless such is the legal effect of the facts reported ; but having authorized and assented to all the transactions stated, and standing in not only the real but in addition in such apparent relation to the business as is shown by the report, and having security for all that he and Burton furnished through the plaintiff, we think justice clearly demands that he should not be allowed to repudiate the small balance of the plaintiff's account above his subscription on the score that he never expressly assented to it.

The *pro forma* judgment is reversed, and judgment is rendered for the plaintiff to recover the amount of his account with interest, above the amount of his subscription, with costs.