C. E. JOHNSON AND COMPANY *v.*
LEON MARSH AND FRANK P. UFFORD.

May Term, 1940.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and
JEFFORDS, JJ.

Opinion filed October 1, 1940.

*Lee E. Emerson* for the defendant Ufford.

*Raymond L. Miles* for the plaintiff.

MOULTON, C. J.   The defendant Frank P. Ufford, who lives in New York City, owns a farm in the town of Brighton, which he leased to the defendant Leon Marsh, on August 27, 1937, for the term of one year, together with stock and equipment thereon. The lease contained the following provisions: "the said lessee doth covenant * * * that he will pay the lessor, his heirs, administrators or assigns the yearly rent of one-half the proceeds and products of operating the farm, which aid lessee agrees to pay as received and produced, this lease being made on equal shares, the parties to share the income and each to pay his half of the expenses, but nothing herein shall authorize the lessee to obligate the lessor or to obtain credit in his name.   The milk shall be sent to a creamery agreed upon by both parties and registered in the lessor's name and the proceeds after paying the grain bills shall be equally divided.   The cost of seed grain, fertilizer, taxes and insurance shall be paid equally but the lessor shall not be chargeable with or pay the cost of any labor. * * * The lessee shall be entitled to half the increase of the stock after keeping good the present dairy, which he agrees to do, before any division."   It was also provided that grain left at the end of the term should be divided equally, and that grain then on the premises should be an expense of operation and shared equally.

During the term of the lease Marsh purchased from the plaintiff grain, hay, seed, staples, salt, phosphate and molasses to the amount of $361.83, which the latter seeks to recover in this action from both defendants.   Trial was by jury, with verdict against the defendants jointly for the amount of the plaintiff's claim. Marsh interposed no defense, but Ufford contested his liability and the cause comes before us upon his exceptions.

At the close of all the evidence, Ufford moved for a directed verdict, which was overruled, subject to his exceptions.

There seems to be little, if any, real conflict in the testimony,

but, resolving all possible discrepancies in favor of the plaintiff, this is the fair purport of the evidence: In September, 1937, shortly after he had gone upon the farm under the lease from Ufford, Marsh desired the plaintiff to furnish some grain to him. Since Marsh was a stranger, the plaintiff inquired concerning the payment and Marsh informed him that he had rented Ufford's farm; that the milk checks were going to Ufford; that Ufford had agreed to see that the bills were paid, and that, after that, the balance was to be divided. The plaintiff then sold the grain, charging it on his records to Marsh. He made no request to see the lease, and no inquiry as to the authority of Marsh to bind Ufford. About January 1, 1938, Ufford asked Marsh to obtain an itemized statement of the grain purchased since the preceding September. Marsh did so, telling the plaintiff that Ufford had asked for it. The statement was made out in the name of Marsh and given to him. He sent it to Ufford in New York, and the plaintiff received a check for the amount, $72.96, from Ufford. Later, in the spring, Ufford told Marsh to buy some seed, specifying no particular dealer, but instructing him to purchase it where he could obtain the best price. Marsh bought it from the plaintiff. It came to $13.25, and the bill was made out, and delivered, to Marsh who sent it to Ufford. The latter sent Marsh a check payable to him, which he gave to the plaintiff. In June Ufford authorized another purchase of seed, which came to $36.91, and here the bill was made out and delivered to Marsh, and paid by Ufford's check to the order of Marsh, later given by him to the plaintiff. On February 12, 1938, Marsh paid $8. in cash for a purchase from the plaintiff, and on June 13, received a credit for $17.50 for phosphate returned.

The account in suit was started soon after the payment of $72.96 in early January, and originally was for grain only. Late in March, 1938, Marsh wanted to buy hay, but the grain bill had reached such an amount that the plaintiff was unwilling to extend further credit to him, and asked him who would pay. Marsh said that Ufford would see to it, and the plaintff sold the hay relying upon this statement. He testified that he sold the grain and other items on the same reliance and that he expected that it was a joint obligation. All the slips recording the sales were made out in the name of Marsh, ("for identification," as the plaintiff put it) but at some unspecified time after the deliveries,

and before bringing this action, the plaintiff changed them by adding the words "and Ufford." About June 1, 1938, Marsh told the plaintiff that Ufford wanted a statement of the merchandise theretofore delivered to Marsh and on June 11 the plaintiff sent Ufford a bill containing the items for which recovery is sought. This statement was made out to Marsh alone and, not being paid, the plaintiff sent another statement to Ufford on September 9, which was in the names of Marsh and Ufford, and this was the first intimation to the latter that he was being charged with or was expected to pay the bill. On September 15, he wrote the plaintiff as follows: "I have your statement of September 9th for feed etc. ordered by Mr. Marsh. I note that this is a continuation of the bill which you rendered Marsh on June 11th, in his name only and that you have now added mine. As you, of course know, I did not order the goods. My lease to Mr. Marsh provided that he was not authorized to obligate me or to obtain credit in my name and it seems that he opened the account in his own name. I have already paid more than my half of the expenses of operating the farm last year and am under no obligation for this bill."

During the period from September 1937 to January 1938, Ufford lent his shares of the milk checks to Marsh, who was in need of financial assistance, but in the latter month Marsh wrote him: "You need not send any more checks on my account and I would like your bill against me on the check." At the end of the year covered by the lease the two had a settlement in which, after listing the bills of $72.92, $13.25 and $36.91 and the unpaid account in suit among the operating expenses of the farm, along with other items of taxes, insurance, etc., and charging against Marsh cash advances to him from Ufford amounting to $121.58, it appeared that there was a balance due Ufford of $111.03, for which Marsh give his promissory note. By this settlement the plaintiff's bill was left for Marsh to pay.

The theory upon which the plaintiff relied on trial, and in argument here, is that the evidence fairly and reasonably tended to show that a partnership existed between Marsh and Ufford, or, failing this, that they were joint obligors.

The lease defines the legal relationship of the parties to it, and, being free from latent ambiguity, its construction, taking all of its provisions into consideration, is a question of

law. *Freeguard* v. *Bingham,* 108 Vt. 404, 406, 187 Atl. 801; *Brunelle* v. *Eastern Casualty Ins. Co.* 108 Vt. 170, 172, 183 Atl. 493; *Bianchi Granite Co.* v. *Terre Haute Monument Co.* 91 Vt. 177, 184, 185, 99 Atl. 875; *Vermont Marble Co.* v. *Eastman,* 91 Vt. 425, 444, 101 Atl. 151. An agreement to share the profits and losses of an adventure is an essential element of a partnership, and, ordinarily, is sufficient to constitute the parties to such agreement partners. But it is not always decisive as between the parties, for "there is a clear distinction between agreements wherein the parties have a specific interest in the profits *qua* profits and agreements which give to the person sought to be charged as partner, not specific interest in the business or profits, but a stipulated proportion of the proceeds as compensation for his labor and services. The former constitutes a partnership: the latter do not." *Farmers' Exchange* v. *Brown,* 106 Vt. 65, 67, 68, 169 Atl. 906, 907 and cas. cit: *Sheldon* v. *Little, post,* 301, 15 Atl. 2d 574. The same principle applies where, as here, the compensation is not for labor or services, but for rent, the amount of which is to be dependent upon the success of the business. *Felton* v. *Deall,* 22 Vt. 170, 174, 54 Am. Dec. 61; and see cas. cit. in annotation, 18 L. R. A. (N. S.) 1041, 1066; 115 Am. St. Rep. 442; and 58 Am. Rep. 101. The lease, then, did not create a partnership. Indeed it seems to come within the third class of contracts for the carrying on a farm on halves, as listed in *Walworth* v. *Jenness,* 58 Vt. 670, 673, 5 Atl. 887, that is, one in which the parties are tenants in common of the crops, and the occupant has an interest in the land.

It is contended, however, that although Marsh and Ufford may not have been partners *inter sese,* they are to be holden as partners with respect to the plaintiff. The principle is well settled that where a person holds himself out as a partner, or knowingly permits himself to be so held out, he is estopped from denying liability as such to one who has extended credit in reliance thereon, although no partnership has in fact existed. *Kellogg* v. *Griswold,* 12 Vt. 291, 294, 295; *Cottrill* v. *Vanduzen,* 22 Vt. 511, 514; *Carlton & Manning* v. *Coffin,* 28 Vt. 504, 507; *Smith* v. *Hill,* 45 Vt. 90, 92, 12 Am. Rep. 189; *Smith* v. *Burton,* 59 Vt. 408, 422, 10 Atl. 536; *Farmers' Exchange* v. *Brown,* 106 Vt. 65, 69, 169 Atl. 906; *Brocato* v. *Serio,* 173 Md. 374, 196 Atl. 125, 130; *Seabury & Johnson* v. *Bolles,* 51 N. J. L. 103, 16 Atl.

54, 55, 11 L. R. A. 136; aff. 52 N. J. L. 413, 21 Atl. 952, 11 L. R. A. 136; *Anfenson* v. *Banks,* 180 Iowa 1066, 163 N. W. 608, L. R. A. 1918D 482, 494; *Campbell* v. *Githens,* 94 Ind. App. 681, 182 N. E. 100, 101. But where the acts or statements of another are claimed to be the basis for the estoppel it must appear that such acts or statements have been with the knowledge and assent of the person sought to be held as a partner. *Hastings* v. *Hopkinson,* 28 Vt. 108, 114; *Brancato* v. *Serio, supra; Anfenson* v. *Banks, supra.* "It is obvious that no one can be charged as a partner when the acts relied upon for that purpose are neither his own acts, nor acts of others authorized or made known to him." *Lighthiser* v. *Allison,* 100 Md. 103, 59 Atl. 182, 183. The principle is clearly recognized in *Smith* v. *Burton, supra; Smith* v. *Hill,* 45 Vt. 90, 92, 12 Am. Rep. 189; and *Bank of United States* v. *Lyman,* 20 Vt. 666, 672, Fed. Cas. No. 924. The circumstances, moreover, may be such that a person dealing with an alleged partnership is put upon inquiry concerning the real nature of the relationship, and charged with the knowledge of such facts as might have been disclosed by a reasonably diligent investigation. *Chapman* v. *Devereux,* 32 Vt. 616, 620, 621; *Morgan* v. *Farrel,* 58 Conn. 413, 20 Atl. 614, 615, 18 Am. St. Rep. 282; *Anfenson* v. *Banks, supra; Bromley* v. *Elliott,* 38 N. H. 287, 75 Am. Dec. 182, 187.

The present case is barren of evidence tending to show that Ufford held himself out as a partner. His payment of the grain bill of $72.96, rendered in the name of Marsh, was no representation, express or implied, that he was liable thereon; and at that time (early January, 1938) as it will be remembered, he was making advances to Marsh of his half of the milk checks, owing to the latter's embarrassed condition. Still less can the checks drawn to the order of Marsh and sent to him so that the bill of $13.25 and $36.91, which had been rendered to Marsh, could be paid be considered as having any effect upon the question. Ufford had no knowledge that the plaintiff looked to him for payment until the receipt of the bill of September 9, when he promptly repudiated any liability thereon. He had no knowledge of any representations by Marsh concerning the payment of the bills, or that his credit was being pledged, contrary to the agreement between them. A request by the plaintiff to examine the lease or a letter to Ufford, whose address, if not known, could

have been easily ascertained, would have disclosed the real situation and made clear the fact that Marsh was forbidden to obligate Ufford, or to obtain credit in his name. Even if a partnership had actually existed, knowledge of this provision in the lease would have prevented the plaintiff from holding Ufford liable. *Hastings* v. *Hopkinson,* 28 Vt. 108, 116; *Chapman* v. *Devereux,* 32 Vt. 616, 623. The information that there was an agreement of lease between Marsh and Ufford concerning the working of the latter's farm, and the representation of Marsh that Ufford would pay the bills, was sufficient to put the plaintiff, as a prudent man, upon inquiry as to the true nature of the contract and he must be charged with knowledge of what such inquiry would have disclosed.

The claim that the two defendants are jointly liable is disposed of by what we have already said. It is true that a partnership is not the same thing as joint responsibility, and that two persons may be liable as joint contractors, though not liable as partners. *Dunbar* v. *Farnum et ux.,* 109 Vt. 313, 318, 196 Atl. 237, 114 A. L. R. 996. But to hold them as such it must appear that both of them joined in the promise, and here there is no evidence that Ufford became a party to the contract declared on. *Hodges* v. *Eastman,* 12 Vt. 358, 359.

The plaintiff calls attention to a question and answer in the testimony of Marsh which, he claims, tends to support the theory of joint liability. Marsh was asked, by plaintiff's counsel: —"At that time (about September 1st, 1938, when the lease of the farm expired) did Mr. Ufford say to you that under this new trade which you are going to make now for the next year, you are to assume our bill at Johnson's?", and answered, "He did." This assent to the expression "our bill" is claimed to be evidence that Ufford regarded himself as liable thereon. But the words seem to have been put into the mouth of the witness, and, at the most, amount to no more than a scintilla which is not sufficient to support a verdict. *Wellman, Admr.* v. *Wales,* 98 Vt. 437, 448, 129 Atl. 317.

The lack of evidence fairly and reasonably tending to show that Ufford was either a partner or a joint contractor, does not affect the verdict against Marsh. P. L. 1628; *McKane* v. *Gordon et al.,* 85 Vt. 253, 261, 81 Atl. 637; *Reynolds* v. *Field,* 41 Vt. 225, 227.

It is not necessary to consider the other exceptions taken on behalf of the defendant Ufford.

*The judgment against the defendant Marsh is affirmed. The judgment against the defendant Ufford is reversed and judgment is rendered that he recover his costs.*