## Kenneth Burchesky, D.D.S. v. Department of Employment and Training

[577 A.2d 672]

No. 86-076

Present: Allen, C.J., Peck, Dooley and Morse, JJ.

Opinion Filed December 29, 1989

Motion for Reargument Denied May 17, 1990

*Kenneth Burchesky*, pro se, Lyndonville, Plaintiff-Appellant.

*Brooke Pearson*, Montpelier, for Defendant-Appellee.

**Peck, J.** Kenneth Burchesky (Employer) appeals from a decision of the Employment Security Board affirming an assessment for unpaid contributions, interest, and penalties in the amount of $2,959.80. We affirm.

Employer provided preventive and general dentistry services in Lyndonville under the name "Lyndon Dental Service." On May 5, 1982, Dr. Burchesky informed the Unemployment Compensation Division of the Department of Employment and Training (Division) that after nine years as an employer he was no longer furnishing employment to employees. Dr. Burchesky's file was deactivated effective September 30, 1981. When the Division determined that ten individuals were Dr. Burchesky's employees, he challenged the status of six of those ten.

Of the six, Rhonda Webster was retained by Dr. Burchesky as a dental hygienist, and Dr. Robert Turton performed services as a dentist in the office building Dr. Burchesky owned. Both were paid on commission by Dr. Burchesky. The remaining four performed services as office managers. Lynn Young, who was the office manager for Dr. Burchesky from August, 1982 until December, 1983, handled the paperwork associated with the practice, as well as purchasing. She cleaned up around the office, prepared for the patients, and attended to the bookkeeping. She also answered the phone, typed correspondence, and set up patient appointments. When the patients were in the of-

fice, she sometimes counseled them on their diet, as well as the brushing and flossing of their teeth. In addition, she sterilized instruments and performed miscellaneous services. Young worked approximately 35 hours per week in the office and occasionally worked up to two hours a week at home doing typing or scheduling. She was paid based on a percentage of the gross revenues generated by the practice. Jean Tardif and Cathy Densmore (Densmore) were also hired by Dr. Burchesky as office managers, with duties similar to those performed by Young.

When Densmore filed an unemployment claim, a Division field auditor interviewed her and issued a Field Auditor's Report on June 18, 1982 indicating that she had been employed by Dr. Burchesky. Seeking Dr. Burchesky's employment records, the Division obtained a court order compelling submission, and an audit was conducted on October 12, 1983. Because Dr. Burchesky failed to provide any records at that audit for the periods after November 11, 1982, the Division estimated payroll figures for the periods starting with the quarter ending December 31, 1982.

The Division asserted, and the Chief Appeals Referee and the Board found, that for 1981, Dr. Burchesky paid those in his office a total of $21,555.43 for their services. For the first quarter of 1982, the amount was $4,385.12; in the second, $2,781.54; and in the third, $2,841.00. As noted earlier, beginning with the fourth quarter of 1982, the Division was forced to estimate the amount of wages paid by Dr. Burchesky, as he refused to provide payroll records after November 11, 1982. For that quarter, the auditor estimated that the amount paid by Dr. Burchesky for services rendered totalled $1,361.90.

The Division assigned Dr. Burchesky a contribution rate of 5.5 percent, plus a .5 percent emergency tax for the 1981–1982 rate year. For the 1982–1983 rate year, his contribution rate was set at 5.2 percent, plus a .5 percent emergency tax. For the 1983–1984 rate year, the contribution rate was set at 4.3 percent, in addition to the .5 percent emergency tax.[1]

---

[1] These rates reflected unemployment compensation benefits paid to Bernadette Johnson, a former employee of Dr. Burchesky, who was determined

The Chief Appeals Referee upheld the Division's decision, and after the Board sustained the Referee, the present appeal followed.

## I.

Employer's pro se brief presents numerous arguments that are stated and restated in a manner that raises questions as to their precise meaning. In keeping with this Court's policy of giving pro se litigants every reasonable assistance, see, e.g., *Vahlteich v. Knott*, 139 Vt. 588, 591, 433 A.2d 287, 289 (1981), we have tried to summarize his contentions in a way that clarifies his positions and maximizes his points.

At the heart of his appeal is the argument that some of the contracts with persons working in his business were partnership or leasing agreements lying outside the scope of the unemployment compensation statute. The central example remaining on appeal[2] is an alleged leasing agreement with Dr. Turton. The Division argued, and the Board found, that the agreement was in essence an ordinary contract for the provision of services, fully subject to the unemployment compensation statute. We agree. The handwritten agreement in evidence expressly stated that its purpose was "[t]o provide Preventive & General Dentistry Services in Lyndon, Vermont" with remuneration "at a rate of 60% of Dr. Turton's generated fees collected." The agreement provided that "Dr. Turton shall lease the space owned by Dr. Burchesky," but beyond the statements of intention that the document be considered both a lease and an "independent contracting agreement," there are no substantive indications of a bona fide lease.

The Board looked to the substance of the contract, not its label, and properly concluded that the agreement reflected an arrangement whereby Dr. Turton received a fixed percentage of the billings for which he was responsible at Dr. Bur-

---

eligible for unemployment compensation benefits on the basis of an unappealed referee's decision dated August 19, 1980.

[2] The Department in its brief agreed to amend its assessment to delete all payments made to Ms. Webster in 1981 and thereafter, and only the payments to Dr. Turton remain for consideration in this appeal.

chesky's dental clinic. Dr. Turton did not share the risks or benefits of the business enterprise. See *Harman v. Rogers,* 147 Vt. 11, 510 A.2d 161 (1986). His compensation was a function of the amount of his own time and effort, without regard to the risk factors inhering in Dr. Burchesky's business. This arrangement did not create a partnership. See *C. E. Johnson & Co. v. Marsh,* 111 Vt. 266, 271, 15 A.2d 577, 580 (1940).

■ This conclusion is confirmed by our unemployment compensation statute, 21 V.S.A. § 1301(6)(B), which states as follows:

> (B) Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the commissioner that:
> (i) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and
> (ii) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
> (iii) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

In order for services not to qualify as employment, a potential employer must satisfy all three prongs of the test (sometimes referred to as the "ABC test"). Failure to meet even one of the prongs results in the necessary conclusion that particular services constitute employment. *Price v. Department of Employment & Training,* 150 Vt. 78, 79, 549 A.2d 641, 642 (1988); *Vermont Institute of Community Involvement, Inc. v. Department of Employment Security,* 140 Vt. 94, 98, 436 A.2d 765, 767 (1981). The intention of the parties to characterize their relationship as beyond the "ABC" criteria is irrelevant if the substance of their relationship and their actions is not consistent with their expressed intent. *In re Bargain Busters, Inc.,* 130

Vt. 112, 116, 287 A.2d 554, 558 (1972). Any law that preferred expressed intention over reality would clearly favor the interests of employers, whose bargaining position will often be superior to that of its workers, and would defeat the broad purposes of the unemployment compensation statute. On the other hand, the "ABC test" does not hamper those who undertake to do business together as independent contracting parties, rather than as employer and employee.

■ In the present case we agree with the Chief Appeals Referee and the Board that Dr. Turton's services fell within the coverage of 21 V.S.A. § 1301(6)(B). Dr. Turton was a dentist working on dental patients in a dental clinic. Dr. Burchesky's argument that Dr. Turton's services for the dental clinic were outside the usual course of *Turton's* business, rather than Dr. *Burchesky's* business, within the meaning of § 1301(6)(B)(ii)[3] misreads the statute. The argument presupposes that Dr. Turton was the operator of an independent business—the very proposition that Dr. Burchesky seeks to prove. The clear focus of § 1301(6)(B)(ii) is Dr. Burchesky's business and the services performed within the usual course of that business, not within the usual course of the "business" of the person performing services for him. This argument is without merit.

The application of the "ABC" test principles to the several office managers in Dr. Burchesky's clinic yields just as strong a case. It was clear on the record that the office managers were not independent contractors, nor would common sense and experience lend weight to the contention that they were.

■ ■ Dr. Burchesky argues next that the services performed by Dr. Turton should have been excluded from covered "employment" under 21 V.S.A. § 1301(6)(C)(xviii), which provides:

The term "employment" shall not include:

Service performed by an individual for a person as a salesman, agent or solicitor if the state law requires the individual to be registered or licensed to engage in the per-

---

[3] The text of subsection (ii) is recited above.

formance of the service and if the individual in the performance of such service is an independent contractor under common law rules and if the individual performs all such service for remuneration solely by way of commission.

This argument was not raised below and will not be considered on appeal. *Hinckley v. Town of Jericho*, 149 Vt. 345, 346, 543 A.2d 260, 261 (1988). In light of Dr. Burchesky's pro se status, we will, however, add that even if he had raised this issue before the Board, the language clearly is inapplicable to a dentist working in a dental clinic; Dr. Turton could not have been considered a "salesman, agent or solicitor" for Dr. Burchesky within the meaning of the statute, nor could he be considered an independent contractor under common law rules.

■ Moreover, as the record confirms, the managers' services were necessarily performed under Dr. Burchesky's control and at his place of business. Thus, Dr. Burchesky did not have a partnership or independent contractor relationship with any of them.

## II.

Dr. Burchesky raises constitutional claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Though the arguments are intermixed with his other claims, as we understand them, he contends that his due process right to enter partnerships without hindrance from the state has been impaired, and that the numerous exceptions to the unemployment compensation statute deny him equal protection of the laws.

■ His due process arguments, though separate from his other claims on appeal, are a restatement of his earlier points. The Board fully understood that Dr. Burchesky attempted in good faith to establish relationships with the staff that could not be characterized as employment. He was indeed free to undertake any bona fide, arm's length agreement with those who worked in his clinic, but was not free to avoid the provisions of 21 V.S.A. § 1301(6)(B) by mutual consent. Calling his employ-

ment arrangements partnerships did not make them partnerships for purposes of the unemployment compensation laws.

Nor does the presence of exceptions within the unemployment compensation statute render it void, short of some demonstration that the exceptions are so pervasive as to render the act as a whole irrational. See *State v. Ludlow Supermarkets, Inc.*, 141 Vt. 261, 265–66, 448 A.2d 791, 793 (1982). No such showing has been made.

Appellant's other arguments concern the computations made by the Department. Upon review, we find no errors.

*Affirmed.*